## DORIS HENSLIN FOESCH v. INDEPENDENT SCHOOL DISTRICT NO. 646.

223 N. W. 2d 371.

August 2, 1974—No. 44604.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly, Robert B. Weinstine,* and *Paul R. Hannah,* for appellant.

*Wagemaker & Wagemaker* and *James Wagemaker,* for respondent.

Heard before Peterson, MacLaughlin, and Yetka, JJ., and reconsidered and decided by the court en banc.

YETKA, JUSTICE.

Appeal from an order issued on August 7, 1973, by the Renville County District Court upholding the order of the School Board of Independent School District No. 646 terminating appellant's teaching contract. We reverse and remand for further findings.

On March 9, 1973, the School Board of Independent School District No. 646 passed a resolution discontinuing two teacher's positions in the elementary school, grades 1 through 6, on grounds of a decrease in student enrollment. Pursuant to this decision, the board voted to terminate the continuing teacher's contract of appellant.

Appellant received due notice of this action and requested a hearing as provided in Minn. St. 1971, § 125.12, subd. 4. At the hearing, which was held before the school board on March 29, 1973, the following evidence was placed in the record:

Appellant, a duly certified, tenured teacher, had taught second grade for 16 years, the past 8 years at the Bird Island Elementary School in District No. 646.

Appellant's contract specified her "general assignment" as *"Elementary Teacher."* (Italics supplied.) No reference to a particular position or assignment is contained in this contract. However, her evaluation form specifies her "Teaching Assignment" as "2nd Grade."

Prior to the board's March 9 resolutions terminating the contracts of two elementary teachers, Mr. Gerald Nelson, principal of elementary school, made an in-classroom evaluation of each teacher in the two elementary schools (kindergarten through grade 6) in the district. Twenty teachers were evaluated: Three were specialized (phy. ed., developmental reading, elementary music); two were assigned to kindergarten; and the balance were assigned to grades 1 through 6. These evaluations were rated according to a mathematical formula assigning a numerical value to each particular rating of the various categories of the evaluation form. The final result of each evaluation was a numerical score. These results were forwarded to the superin-

tendent, who, in turn, reported these results to the board. The two teachers terminated had the scores indicating less competence relative to the other teachers. Presumably these evaluations were the major factors in the selection of the teachers to be dropped. These evaluations did not specify the school to which the teacher was assigned.

The record also contains a numerical breakdown of the number of students in kindergarten through grade 6 for both the Bird Island and Lake Lillian elementary schools. This report covers the school year 1968-1969 through the projected enrollment for the 1973-1974 school year, along with the number, but not identities, of teachers assigned to each class in each year.

A short summary of the findings made by the school board following the hearing on appellant's termination is as follows:

Findings Nos. 1 to 3. That the termination of appellant was based on Minn. St. 1971, § 125.12, subd. 6(e), relating to discontinuance of *position*. (Italics supplied.)

Findings Nos. 8 and 9. Recited various figures as to the *total* student enrollment in the elementary grades and kindergarten, along with the number of teachers assigned during school years 1968-1969 through 1972-1973. The projected decrease in enrollment in school year 1973-1974 was based on *total* elementary and kindergarten enrollment.

Finding No. 10. That 14 full-time elementary teachers and 1 half-time elementary teacher would be sufficient to handle the needs of the elementary school for the 1973-1974 school year.

Findings Nos. 11 to 13. Recited the evaluation procedure and further recited that appellant received the second poorest overall score.

Finding No. 14. That "[appellant] has a contract with [respondent] as an elementary teacher and *not as a teacher of any specific elementary grade.*" (Italics supplied.)

The board concluded that the contract of appellant would be terminated at the end of the 1972-1973 school year because of discontinuance of *position* due to lack of pupils.

Following review by certiorari, the district court issued an order upholding the decision of the school board and finding that the findings of fact and order terminating appellant's contract were supported by the evidence.

The court, in a memorandum, stated that petitioner held the position of teacher of *primary* grades. The court went on to point out that "[t]he past and projected enrollment pattern of primary grades of the Bird Island school show alternately large and small classes and this pattern continues to some extent into the intermediate grades. A continuous movement of teachers from one to the other of the primary grades is inevitable in such a situation."

 The first issue on appeal is whether the board's termination of appellant's contract was in violation of Minn. St. 1971, § 125.12, the relevant portion of which provides:

"Subd. 6. A continuing contract may be terminated, effective at the close of the school year, upon any of the following grounds:

\* \* \* \* \*

"(e) Discontinuance of *position,* lack of pupils \* \* \*." (Italics supplied.) [1]

---

[1] The legislature, by L. 1974, c. 458, has now amended Minn. St. 1971, § 125.12, by deleting subd. 6(e) and adding two new subdivisions which read as follows: "Subd. 6a. The school board and the exclusive bargaining representative of the teachers may negotiate a plan providing for unrequested leave of absence without pay or fringe benefits for as many teachers as may be necessary because of discontinuance of position, lack of pupils, financial limitations, or merger of classes caused by consolidation of districts. Failing to successfully negotiate such a plan by the beginning date of a new master contract, the provisions of subdivision 6b shall apply. The provisions of Minnesota Statutes, Section 179.72 shall not apply for the purposes of this subdivision." (Italics omitted.)

"Subd. 6b. The school board may place on unrequested leave of absence, without pay or fringe benefits, as many teachers as may be necessary because of discontinuance of position, lack of pupils, financial limitations, or merger of classes caused by consolidation of districts.

Appellant contends that her *position* was second grade teacher as designated on her evaluation form. Since two teachers were assigned to the second grade at the Bird Island school for the 1973-1974 school year due to an *increase* in second grade stu-

---

The unrequested leave shall be effective at the close of the school year. In placing teachers on unrequested leave, the board shall be governed by the following provisions:

(a) The board may place probationary teachers on unrequested leave first in the inverse order of their employment. No teacher who has acquired continuing contract rights shall be placed on unrequested leave of absence while probationary teachers are retained in positions for which the teacher who has acquired continuing contract rights is certified;

(b) Teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are certified in the inverse order in which they were employed by the school district. In the case of merger of classes caused by consolidation of districts or in the case of equal seniority, the order in which teachers who have acquired continung contract rights shall be placed on unrequested leave of absence in fields in which they are certified shall be negotiable;

(c) Notwithstanding clauses (a) and (b), if either the placing of a probationary teacher on unrequested leave before a teacher who has acquired continuing rights or the placing of a teacher who has acquired continuing contract rights on unrequested leave before another teacher who has acquired continuing contract rights but who has greater seniority would place the district in violation of its affirmative action program, the district may retain the probationary teacher or the teacher with less seniority;

(d) Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence or, if not available, to other available positions in the school district in fields in which they are certified. Reinstatement shall be in the inverse order of placement on leave of absence. The order of reinstatement of teachers who have equal seniority and who are placed on unrequested leave in the same school year shall be n'egotiable;

(e) Teachers, other than probationary teachers, terminated under Minnesota Statutes 1971, Section 125.12, Subdivision 6, Clause (e), in the 1973-74 school year shall be reinstated to the positions from which they have been terminated or, if not available, to other available posi-

dents, appellant argues that the position of second grade teacher was not eliminated, rather it was doubled.

Respondent contends that appellant held the position of "elementary teacher" as set forth on her contract and that, since two elementary positions had been eliminated due to an unquestioned decrease in the number of elementary grade students for the 1973-1974 school year, the board's actions were proper.

tions in the school district in fields in which they are certified. Reinstatement shall be in the order of seniority. The order of reinstatement of continuing contract teachers who have equal seniority and who are terminated under Minnesota Statutes 1971, Section 125.12, Subdivision 6, Clause (e) in the 1973-74 school year shall be negotiable. These teachers shall also be subject to clauses (f), (g), (h), (i) and (k) of this subdivision.

(f) No appointment of a new teacher shall be made while there is available, on unrequested leave, a teacher who is properly certified to fill such vacancy, unless the teacher fails to advise the school board within 30 days of the date of notification that a position is available to him, that he may return to employment and that he will assume the duties of the position to which appointed on a future date determined by the board;

(g) A teacher placed on unrequested leave of absence may engage in teaching or any other occupation during the period of this leave;

(h) The unrequested leave of absence shall not impair the continuing contract rights of a teacher or result in a loss of credit for previous years of service;

(i) The unrequested leave of absence of a teacher who is not reinstated shall continue for a period of two years after which the right to reinstatement shall terminate;

(j) The same provisions applicable to terminations of probationary or continuing contracts in subdivisions 3 and 4 shall apply to placement on unrequested leave of absence;

(k) Nothing in this subdivision shall be construed to impair the rights of teachers placed on unrequested leave of absence to receive unemployment compensation if otherwise eligible." (Italics omitted.)

L. 1974, c. 458, § 5, reads: "This act shall be effective on April 15, 1974, but shall not affect any termination proceedings commenced prior to its effective date except any teacher terminated under these prior proceedings shall have the reinstatment rights provided in section 4, subdivision 6b, clause (e)."

State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. 2d 544 (1942), is the only decision of this court relevant to the question at hand, which is simply: What was appellant's *position*? The court in Ging took the view that the designation of position as "teacher of [the] School District" was too broad. Rather it was held:

"* * * *That teachers in the primary, intermediate, and grammar grades respectively occupy separate and distinct positions in the school system should be self-evident, notwithstanding all grades below high school are, for convenience, grouped into one elementary division.* Teachers who are efficient kindergarten or primary teachers and hired for that purpose and assigned to that work may generally be inefficient in the intermediate or grammar grades, where older pupils are taught, and vice versa. [Citation omitted.] When a teacher has been assigned to the teaching of primary grades for a period sufficient to establish tenure rights, she should have priority over teachers from the intermediate or grammar grades notwithstanding the tenure rights of each are the same. *Once a teacher has acquired a position as a primary teacher, the transfer of teachers from the upper grades to fill a position which would otherwise be hers is clearly arbitrary and based upon an erroneous theory of law.*" 213 Minn. 587, 7 N. W. 2d 563. (Italics supplied.)

In effect, both parties urge that we overrule the Ging definition of position. This is difficult for several reasons. First, we note that Ging was decided on the basis of an extensive record which presumably contained factual support for the classifications of "positions" that were established therein. Secondly, Ging was decided some 32 years ago. Since then the legislature has modified the statutes relevant to tenure of teachers on numerous occasions. Yet the statutory language relating to *position* has remained intact.

What is a proper "classification" or "position" is not something this court feels qualified to decide without a complete record. The court made the attempt once in the Ging case, and it

is quite apparent the court failed to end the speculation as evidenced by the case at bar.

A board of education, when deciding whether to hire or to terminate a teacher, is acting in an administrative capacity, and a reviewing court on appeal can set aside that decision only when the determination of the administrative agency is fraudulent, arbitrary, unreasonable or not supported by substantial evidence on the record; not within its jurisdiction; or based on an erroneous theory of law. Lindgren v. City of Crystal, 295 Minn. 557, 204 N. W. 2d 444 (1973); Krakowski v. City of St. Cloud, 257 Minn. 415, 101 N. W. 2d 820 (1960).

This does not mean this court cannot review the reasoning behind a decision of the school board, and if the latter's decision is based on an erroneous classification, it could be arbitrary or unreasonable. Under our holding in the Ging case, the theory of law by which the board of education acted in this case would be clearly erroneous. However, Ging was decided in 1942, and while a classification of teachers as primary, intermediate, and grammar may have had some validity then, a majority of this court is not convinced such a classification is valid today. As noted above, it is also quite apparent that appellant and respondent both take issue with that case as well. Therefore the Ging case insofar as it attempted the classification into primary, intermediate, and grammar is expressly overruled.

A resolution of the question at hand requires the trial court not to lose sight of the fact that Minn. St. 125.12 was enacted to protect teachers from arbitrary discharge. On the other hand, this provision was not enacted to place an unreasonable restriction on the powers of a school board which it must possess in order to effectively administer the operation of our schools.

Absent legislative clarification, we feel that the administrative tribunal is the proper forum to take testimony relative to what constitutes a teacher's "position" in the light of today's practice. Such testimony should include that of expert witnesses on the specialized training and classification of teachers as such train-

ing and classification might have a bearing on what grades of students and types of subjects a tenured teacher might be qualified to teach, particularly as to appellant and her replacement. This issue is even more significant because the record indicates that in addition to appellant a first grade teacher was terminated. We assume from the record that a teacher was brought down from the upper grades to teach either the first or second grade. The record in this case is silent as to whether the replacement teacher from the upper grades is qualified to teach at the first or second grade level and vice versa.

Appellant in seeking to define position as a teacher of a specific grade offers a definition which appears to us too narrow. Nor do we feel that the classification of a teacher as simply a teacher within the entire school system has any validity.

■ The second issue raised on this appeal is whether the termination is defective because the board failed to maintain a proper evaluation file. Since the record indicates no objection was made to the evaluation of all teachers in the school district made by the administrative staff, the lack of an evaluation file in this case does not appear to be important to the determination of the main issue, namely, whether appellant was wrongfully terminated.

The case must be remanded to the trial court with instructions that it remand the case back to the Board of Education of Independent School District No. 646 to take testimony and make findings as to whether appellant was hired for instruction in the second grade only, or whether she was qualified and engaged to teach in all the six elementary classes. Secondly, whether the teacher from the upper grades, presumably replacing appellant, was qualified to replace appellant as a second grade instructor. Only when these findings are first made can a finding be made as to whether the appellant was properly terminated.

Reversed and remanded.