662 N.W.2d 139 (2003)
EDUCATION MINNESOTA-CHISHOLM, Chisholm, Minnesota, Petitioner, Appellant,
v.
INDEPENDENT SCHOOL DISTRICT NO. 695, Chisholm, Minnesota, Respondent,
State of Minnesota, Bureau of Mediation Services, Respondent.
No. C1-02-291.
Supreme Court of Minnesota.
June 5, 2003.
*141 Christina L. Clark, Harley M. Ogata, Education Minnesota, St. Paul, MN, for Appellant Education Minnesota-Chisholm.
Michael J. Waldspurger, Ratwik, Roszak & Mahoney, P.A., Minneapolis, MN; and Scott C. Neff, The Trenti Law Firm, Virginia, MN, for Respondent.
Richard Varco, State of Minnesota, Bureau of Mediation Services, Office of the Attorney General, St. Paul, MN, for Respondent Minnesota Bureau of Mediation Services.
Joseph E. Flynn, Jennifer K. Anderson, Knutson, Flynn & Deans, P.A., Mendota Heights, MN, for Amicus Curiae Minnesota School Board Association.
Heard, considered, and decided by the court en banc.

OPINION
HANSON, Justice.
Appellant teachers' union, Education Minnesota Chisholm ("EMC"), petitioned the state Bureau of Mediation Services ("BMS") for a clarification of an appropriate bargaining unit of employees of respondent Independent School District No. 695 ("the District") in Chisholm, Minnesota. EMC claimed that the six Early Childhood Family Education (ECFE) instructors employed by the District should be included in EMC's bargaining unit. The BMS ruled that ECFE instructors should not be included in the bargaining unit because they did not meet the definition of "public employees," which excludes part-time school staff who provide "community education instruction [that is] offered on a noncredit basis." Minn.Stat. § 179A.03, subd. 14(i) (2002).[1]
EMC appealed, arguing that the term "noncredit basis" did not apply to ECFE instructors because "noncredit" (1) has no meaning in elementary education and (2) was intended by the legislature only to exclude higher education faculty. Education Minnesota-Chisholm v. Independent Sch. Dist. No. 695, 649 N.W.2d 474, 477 (Minn.App.2002) (EMC). The court of appeals affirmed the BMS ruling in a 2-1 opinion. Id. at 480. We granted EMC's petition for review and now affirm.
The parties have stipulated to the facts. EMC is the exclusive bargaining representative for teachers in the District. The District has a long-standing ECFE program which provides instruction to parents and their preschool children. This instruction is not part of the K-12 curriculum and is not part of compulsory education mandated by state law. See Minn.Stat. § 120A.22 (2002).
At the time of the initial petition, the District employed six instructors to work part-time in the ECFE program. Each of *142 these instructors is required to be licensed under normal state teacher-licensing procedures. Minn.Stat. § 124D.13, subd. 11 (2002). Historically, the EMC bargaining unit has not included part-time ECFE instructors or coordinators.
Both the BMS and the court of appeals majority concluded that the ECFE instructors are properly excluded from the bargaining unit because they provide "community education instruction [that is] offered on a noncredit basis," as described in Minn.Stat. § 179A.03, subd. 14, and thus are excluded from the definition of "public employee" under Minn.Stat. § 179A.03, subd. 14(e).
EMC argues that the ECFE instructors should be included in the bargaining unit because (1) they qualify as "public employee[s]" under the statute; (2) the statutory term "noncredit" is ambiguous and inapplicable to school district teachers; and (3) the legislative intent supports the inclusion of ECFE instructors with all teachers in the bargaining unit.
Sections 179A.01 to 179A.25 of the Minnesota Statutes are collectively known as the Public Employment Labor Relations Act (PELRA). Minn.Stat. § 179A.02 (2002). The Act governs the relationships between public employers and their employees. Minn.Stat. § 179A.01 (2002). The crucial section in this dispute, Minn. Stat. § 179A.03 (2002), defines the terms used in PELRA. That section states that the "`[a]ppropriate unit' or `unit' means a unit of employees determined under sections 179A.09 to 179A.11. For school districts, the term means all the teachers in the district." Minn.Stat. § 179A.03, subd. 2 (2002) (emphasis added).
"Teacher," however, does not include all licensed teachers but rather is a term of art in PELRA. As subdivision 18 of the definition section states:
"Teacher" means any public employee other than a superintendent or assistant superintendent, principal, assistant principal, or a supervisory or confidential employee, employed by a school district:
(1) in a position for which the person must be licensed by the board of teaching or the commissioner of children, families, and learning; or
(2) in a position as a physical therapist or an occupational therapist.
Minn.Stat. § 179A.03, subd. 18 (2002) (emphasis added). Thus, only workers who meet the statutory definition of "public employee" can be considered "teacher[s]" under PELRA and are to be included in bargaining units such as the one represented by EMC.
Subdivision 14 of the definition statute defines "public employee" as "any person appointed or employed by a public employer," and then provides 12 enumerated exclusions. Minn.Stat. § 179A.03, subd. 14. The exclusion implicated in this case provides that "part-time employees whose service does not exceed the lesser of 14 hours per week or 35% of the normal work week in the employee's appropriate unit" are not public employees. Id. at subd. 14(e).
The parties agree that none of the ECFE instructors involved in this case have work schedules which exceed the lesser of 14 hours per week or 35% of the normal work week of the District. The parties also agree that, presuming no further provision in PELRA is applicable to the status of the ECFE instructors, these instructors would not be considered "public employees" and therefore would not be included in EMC's bargaining unit.
EMC argues, however, that the part-time employee exclusion quoted above from Minn.Stat. § 179A.03, subd. 14(e), does not apply because of a statutory exemption which states:

*143 The following individuals are public employees regardless of the exclusion[] of clause[](e) * * *:
(i) An employee hired by a school district or the board of trustees of the Minnesota state colleges and universities except at the university established in section 136F.13 or for community services or community education instruction offered on a noncredit basis: (A) to replace an absent teacher or faculty member who is a public employee, where the replacement employee is employed more than 30 working days as a replacement for that teacher or faculty member; or (B) to take a teaching position created due to increased enrollment, curriculum expansion, courses which are a part of the curriculum whether offered annually or not, or other appropriate reasons * * *.
Minn.Stat. § 179A.03, subd. 14 (2002) (emphasis added). The parties do not dispute that the Chisholm ECFE instructors hold teaching positions "created due to * * * appropriate reasons," and they agree that the ECFE instruction provided in Chisholm's program is "community education instruction." See id. at subd. 14(i)(B). They differ only over whether that instruction is "offered on a noncredit basis." See id. at subd. 14(i).
The meaning of the phrase "offered on a noncredit basis" is the dispositive question in this case. If the ECFE instruction in Chisholm is "noncredit," then the ECFE teachers are not exempted from the exclusion to the definition of "public employees" and cannot be in the "appropriate unit" represented by EMC. If, by contrast, Chisholm's ECFE instruction is for credit, then the ECFE instructors are exempted from the exclusion to the definition of "public employees" and are properly included in EMC's bargaining unit.[2]
Construction of a statute is a legal conclusion; thus, this court reviews questions of statutory construction under a de novo standard. In re A.A.E., 590 N.W.2d 773, 776 (Minn.1999). The court's goal in statutory interpretation is to give effect to the intention of the legislature in drafting the statute. State v. Orsello, 554 N.W.2d 70, 74 (Minn.1996); see also Minn. Stat. § 645.16 (2002) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature."). The court begins with a careful examination of the statutory language itself and a reference to the tools of statutory construction provided by the legislature. Orsello, 554 N.W.2d at 74. This court first looks to see whether the statute's language, on its face, is clear or ambiguous. American Family Ins. Group v. Schroedl, 616 N.W.2d 273, 277 (2000). A statute is only ambiguous when its language is subject to more than one reasonable interpretation. Id.
EMC argues that "noncredit" is ambiguous as applied to ECFE. It cites with approval the court of appeals' dissenting opinion, which argued that the use of
[t]he term "community education instruction offered on a noncredit basis" is *144 ambiguous both in text and context because elementary and early childhood education does not have a credit certification system. The word "noncredit" presupposes a credit-noncredit distinction that does not exist in elementary and early childhood education but does apply to secondary and postsecondary education.
EMC, 649 N.W.2d at 481 (Lansing, J., dissenting). EMC concurs, maintaining that "[e]lementary and early childhood education simply do not have a credit certification system or a credit-noncredit distinction. In other words, `noncredit' only means something when it is accompanied by a `for credit' alternative."
We conclude that the ECFE programs fall within the plain meaning of the term "noncredit." We concur with the court of appeals' majority that the sine qua non of academic credit is the "satisfaction of certain academic requirements result[ing] in uniform advancement (usually in one-year increments) and graduation." EMC, 649 N.W.2d at 479. Unlike standard elementary education programs, the ECFE program is not required for and does not provide academic advancement. Instead, its purpose is to provide instruction to parents and their preschool children that is not part of the K-12 curriculum. It does not lead to any certification, graduation or similar outcome.
Moreover, we cannot accept the premise of EMC's argument that ECFE programs should be viewed as comparable to elementary education for purposes of interpreting the term "noncredit." We observe that ECFE instruction is offered predominantly to parents and can be viewed as comparable to adult education for purposes of interpreting the term "noncredit." The parent participants receive no certification or academic advancement for their participation in the program.
Because we find the terms of the statute clear and unambiguous, we need not examine the legislative history of Minn.Stat. § 179A.03, subd. 14(i).
Accordingly, we affirm the decision of the court of appeals that the six ECFE instructors employed by the District were properly excluded from the bargaining unit.
Affirmed.

CONCURRENCE
PAUL H. ANDERSON, Justice (concurring).
I concur with the majority's conclusion that the language of Minn.Stat. § 179A.03, subd. 14, is unambiguous, but reach this result with some reluctance. The language in the statute prevents us from reaching any other conclusion, but this result may be contrary to the spirit behind the law.
The majority correctly determines that the term "credit" pertains to the satisfaction of academic requirements, uniform advancement, and certification, graduation, or a similar outcome. Conversely, instruction offered on a noncredit basis is given without an opportunity for uniform academic advancement. Early Childhood Family Education (ECFE) is an optional program that provides instruction for parents and their preschool children aimed at enhancing the growth and development of preschool children. ECFE participants do not receive certification or academic advancement for their participation in the program.
Nevertheless, Education Minnesota-Chisholm asserts that "noncredit," as it is used in the statute, is ambiguous because the term does not exist in preschool or elementary education and therefore has no meaning in this context. There is some *145 appeal to this argument because the term credit is not typically associated with preschool or elementary education. However, a review of Minnesota's education statutes indicates that the term credit does have relevancy in this context. The Pupil Fair Dismissal Act, which establishes a procedure for the suspension and expulsion of students, applies to all students without a disability under the age of 21. Minn.Stat. § 121A.41, subd. 7(1) (2002). But the act applies only "to those portions of the school program for which credit is granted." Minn.Stat. § 121A.56, subd. 2 (2002) (emphasis added). Thus, the Pupil Fair Dismissal Act specifically recognizes that there are portions of the K-12 school program to which the term credit is relevant.
There is additional support in Minn.Stat. § 123B.35, the Minnesota Public School Fee law, for the conclusion that the terms credit and noncredit have meaning in the context of K-12 education. This law provides that public school education shall be free, but fees may be established "in areas considered extra curricular, noncurricular or supplementary to the requirements for the successful completion of a class or educational program." Minn.Stat. § 123B.35 (2002). The term "curricular" is defined as "those portions of the school program for which credit is granted." Minn. R. 3500.1050, subp. 2 (2001) (emphasis added). "Noncurricular" is defined in part as activities "not for credit or required for graduation." Id. at subp. 4(A) (2001) (emphasis added). Thus, fees may be established for school activities that are "not for credit." For these reasons and those cited by the majority, I agree with the conclusion that ECFE instruction is offered on a noncredit basis and therefore, under the language of the statute, the part-time ECFE teachers in District 695 are excluded from the teachers' bargaining unit.
Despite the foregoing conclusion, I find it difficult to accept that the 1983 amendment to Minn.Stat. § 179A.03, subd. 14(i), which specifically included community college and state university faculty members in PELRA's definition of public employees, was also specifically intended to exclude licensed ECFE teachers from the teachers' bargaining unit. By including postsecondary faculty in the definition of "public employee," the legislature gave these employees the right to organize and bargain collectively with their employer. Minn.Stat. § 179A.06, subd. 2 (2002). The amendment and the first exception were both directly aimed at postsecondary education; therefore, it is most likely that the second exception, the noncredit, community education exception, was also intended to apply to postsecondary education where the terms credit and noncredit have a more broadly accepted and well-understood meaning. Nevertheless, the words of Minn.Stat. § 179A.03, subd. 14(i), are unambiguous, and we must be guided by the principle that "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2002). Therefore, I concur in the result reached by the majority.
PAGE, Justice (concurring). I join in the concurrence of Justice PAUL H. ANDERSON.

CONCURRENCE
PAGE, Justice (concurring).
I join in the concurrence of Justice Paul Anderson. I write separately to raise one point. The court, in its opinion, relies on the fact that the ECFE program, unlike K-12 programs, does not "lead to any certification, graduation, or similar outcome" to conclude that the ECFE program falls within the meaning of "noncredit." While it is clear from the record that "satisfaction *146 of certain academic requirements result[ing] in uniform advancement (usually in one-year increments) and graduation" accurately describes what takes place in grades 1 through 12, it is not so clear with respect to kindergarten.
Thus, to the extent that the court relies on kindergarten to support its conclusion that the ECFE program is a noncredit program and to the extent that "satisfaction of certain academic requirements result[ing] in uniform advancement" are not required for kindergarten, the court's conclusion that the ECFE program is offered on a noncredit basis is troubling. Education Minnesota-Chisholm v. Independent Sch. Dist. No. 695, 649 N.W.2d 474, 479 (Minn.App.2002).
NOTES
[1] We refer to the pertinent provision as subdivision 14(i) but note that there are two such provisions: Minn.Stat. § 179A.03, subd. 14(i) [where (i) is a lower-case letter], and Minn. Stat. § 179A.03, subd. 14(i) [where (i) is a roman numeral]. The provision we are concerned with here is the latter provision.
[2] Neither party questions the importance of the ECFE programs. According to the Minnesota Department of Children, Families and Learning, ECFE programs are offered in all of the 341 school districts and the 4 tribal schools in Minnesota. Minnesota Department of Children, Families & Learning, Minnesota Public Schools Early Childhood Family Education Fiscal Year 2002 Fact Sheet, available at http://cfl.state.mn.us/ecfi/ecfefact.htm. These programs provide vital educational services to large numbers of Minnesotans: in the 2000-2001 school year, over 300,000 children and parentsincluding over 43% of Minnesota's pre-kindergarten childrenparticipated in ECFE programs. Id.