Sandy **TISCHER**, Appellant,

v.

**HOUSING AND REDEVELOPMENT AUTHORITY OF CAMBRIDGE,** Respondent.

No. A03–845.

Supreme Court of Minnesota.

March 24, 2005.

Mary Dawn Tietjen, Kennedy & Graven, Chartered, Minneapolis MN, for Appellant.

Thomas P. Malone, Barna, Guzy & Steffen, Ltd., Coon Rapids MN, and Edward

Peter Sheu, Barna, Guzy & Steffen, Ltd., Minneapolis MN, for Respondent.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, Amicus for League of Minnesota Cities.

## OPINION

HANSON, Justice.

Appellant Sandy Tischer sued respondent Cambridge Housing and Redevelopment Authority (HRA) for breach of an employment contract when it eliminated her executive director position and terminated her employment. The district court assumed jurisdiction over her claim, ruling that Minn.Stat. § 469.014 (2004), which specifies that HRAs "shall be liable in contract or in tort in the same manner as a private corporation," provides an exception to the general rule that public employees may only challenge the termination of their employment by writ of certiorari. The court of appeals reversed, holding that section 469.014 establishes the scope of an HRA's liability but does not provide an alternative procedure for bringing a wrongful termination claim. *Tischer v. Hous. & Redev. Auth. of Cambridge,* 675 N.W.2d 361, 365 (Minn.App.2004). We affirm the court of appeals and hold that the district court erred in denying the HRA's motion to dismiss for lack of subject matter jurisdiction.

The HRA hired Tischer as its executive director in 2000. Approximately a year and a half later, the Cambridge City Council shifted control of all HRA functions to the city's Economic Development Authority (EDA). The city council's April 15, 2002, resolution specified that three HRA employees, Tischer not among them, were

to be considered EDA employees as of 12:01 a.m. on April 16.

On the same evening, in response to the city council's action, the HRA's board convened an "emergency meeting" at 10:47 p.m. The board minutes indicate that "[t]he purpose of the meeting was to offer the Executive Director an immediate contract in lieu of transfer of powers attempt by the Cambridge City Council to the EDA, for which no notice had been issued." The two-year contract specified that Tischer was to be paid her current wage of $3,000 per month, plus benefits.

Tischer alleges that on May 6 the city council "purported to add two additional seats" to the HRA, and on May 7 the HRA held a "special meeting" to amend its by-laws, eliminate the Executive Director position, and lay off Tischer effective May 21, 2002. The record contains six HRA resolutions to that effect, one of which explains that by consolidating economic development efforts, the city council aimed to save administrative expenses, coordinate planning, and increase accountability.

Tischer did not challenge her termination by certiorari. Instead, she sued the HRA for breach of contract in district court.[1] In a motion to dismiss, the HRA contended that the district court lacked subject matter jurisdiction because Tischer's termination was a "quasi-judicial" decision subject to review only by certiorari. In response, Tischer contended that her termination was not a quasi-judicial action or, even if it was, section 469.014 specifically conferred jurisdiction on the district court to hear a breach of contract claim.

The district court ruled that the termination was quasi-judicial, but agreed with Tischer that section 469.014 had both substantive and procedural implications and that it conferred jurisdiction on the district court to hear breach of contract claims against a HRA. Consequently, the district court denied the HRA's motion to dismiss for lack of subject matter jurisdiction.

Tischer did not challenge the quasi-judicial nature of her termination before the court of appeals. The court of appeals held that a plain reading of section 469.014 "merely establishes the extent of a HRA's liability, not a procedure for obtaining review of a wrongful discharge claim[,]" and held that the district court erred by denying the HRA's motion to dismiss. *Tischer*, 675 N.W.2d at 365. The court of appeals further held that "Tischer's sole remedy was to appeal to this court by certiorari." *Id.* Tischer sought further review of the sole issue of whether the court of appeals correctly interpreted section 469.014 as not providing subject matter jurisdiction to the district court.

## I.

Tischer argues that section 469.014 creates an exception to the general rule that certiorari is the exclusive remedy for wrongful termination claims brought by employees of an executive body that has less than statewide jurisdiction.[2] We review this issue de novo because statutory interpretation and subject matter jurisdiction are questions of law. *Educ. Minnesota–Chisholm v. Indep. Sch. Dist. No. 695,*

---

1. Tischer's action was commenced on November 8, 2002, approximately 4 months after the 60–day period had expired for seeking review by certiorari. Minn.Stat. § 606.01 (2004).

2. This general rule is stated as being applied to executive bodies that do not have statewide jurisdiction because executive bodies with statewide jurisdiction are subject to the Administrative Procedure Act, which specifies the procedure for obtaining judicial review of their decisions. Minn.Stat. §§ 14.02, subd. 2; 14.44–.45; 14.63–.69 (2004).

662 N.W.2d 139, 143 (Minn.2003); *Handicraft Block Ltd. P'ship v. City of Minneapolis*, 611 N.W.2d 16, 19–20 (Minn.2000).

■ The general rule is founded on separation-of-powers considerations. *Willis v. County of Sherburne*, 555 N.W.2d 277, 280 n. 2 (Minn.1996). We have recognized that the decision of an executive body to terminate an employee is a discretionary exercise of its administrative powers. *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992). Separation of powers requires that such discretionary decisions be granted deference by the judiciary to avoid usurpation of the executive body's administrative prerogatives. *Id.* Because a direct action in the district court would contemplate de novo review, we have concluded that review by certiorari is required to provide appropriate deference and to minimize the judicial intrusion into administrative decision-making. *Id.*[3] Further, review by certiorari protects public resources because it provides an efficient and economical form of judicial review. *Id.* at 240.

■ In *Willis*, we recognized that the legislature may create exceptions to this general rule, stating "the claimant may contest the employer's action by certiorari alone, *absent statutory authority for a different process.*" *Willis*, 555 N.W.2d at 282 (emphasis added). The legislature has enacted exceptions to this general rule, by specifically authorizing a fired public employee to bring a "civil action" in district court to challenge her dismissal on certain specified grounds. *See, e.g.*, Minn.Stat. §§ 181.931, subd. 3; 181.935(a) (2004) (Whistleblower Act); Minn.Stat.

§§ 363A.28, 363A.33 (2004) (Human Rights Act). Tischer argues that by enacting Minn.Stat. § 469.014, the legislature intended to create another exception to the certiorari rule by authorizing HRA employees to challenge their dismissal on breach of contract grounds. Section 469.014 reads:

> Subject to the provisions of chapter 466, *an authority shall be liable in contract or in tort in the same manner as a private corporation.* The commissioners of an authority shall not be personally liable as such on its contracts, or for torts not committed or directly authorized by them. The property or funds of an authority shall not be subject to attachment, or to levy and sale on execution, but, if an authority refuses to pay a judgment entered against it in any court of competent jurisdiction, the district court for the county in which the authority is situated may, by writ of mandamus, direct the treasurer of the authority to pay the judgment.

(Emphasis added.) Because that section does not expressly state that a HRA employee may bring a civil action in district court, Tischer must argue that the exception to the general rule should be implied from the words "in the same manner." Tischer notes that an employee of a private corporation could bring a wrongful termination action in district court.

We have interpreted this statutory language once before, then in the context of whether a notice-of-claim statute applied to a housing authority. *Schultz v. Ruiz,*

---

**3.** To timely pursue certiorari review, the discharged employee must obtain a writ of certiorari within 60 days of receiving notice of the adverse decision. Minn.Stat. § 606.01 (2004); *Dietz*, 487 N.W.2d at 239. Certiorari review is limited to questions of jurisdiction, regularity of proceedings, and whether the decision was arbitrary, oppressive, unreason-able, fraudulent, under an erroneous theory of law, or without any supporting evidence. *Dietz v. Dodge County*, 487 N.W.2d at 239; *Ging v. Bd. of Educ. of City of Duluth*, 7 N.W.2d 544, 556, 213 Minn. 550, 570–71 (1942), *overruled in part on other grounds*, *Foesch v. Indep. Sch. Dist. No. 646*, 223 N.W.2d 371, 300 Minn. 478 (1974).

161 N.W.2d 537, 281 Minn. 281 (1968). In *Schultz,* we concluded:

> Broadly interpreted, the phrase "in the same manner" refers not only to the creation of rights and the extent of liability but also to the procedure for the assertion of those rights.
>
> \* \* \* \*
>
> We believe that a proper interpretation of the phrase "in the same manner" was intended to encompass both the procedural and the substantive law applicable to tort actions.

*Id.* at 540, 281 Minn. at 284, 161 N.W.2d 537.

■ We do not believe that the reference in *Schultz* to procedural law was intended to include all procedures affecting HRA liability. In particular, we do not believe the reference included subject matter jurisdiction, which is fundamentally different than procedural rules. Subject matter jurisdiction cannot be conferred by consent of the parties, it cannot be waived, and it can be raised at any time in the proceeding. Minn. R. Civ. P. 12.08(c); *State ex. rel. Farrington v. Rigg,* 107 N.W.2d 841, 842, 259 Minn. 483, 485–86 (1961) (noting that subject matter jurisdiction cannot be "conferred by consent[,]" and that challenge may be brought "directly or collaterally at any time"). Further, *Schultz* was premised in large part on the view that HRAs were "quasi-private" bodies. 161 N.W.2d at 541, 281 Minn. at 285. The applicable notice-of-claim statute, Minn.Stat. § 465.09 (1961), applied to a "city," and we characterized the HRA as "a corporate entity distinct from the city." *Id.,* 281 Minn. at 286, 161 N.W.2d 537. Section 465.09 was then repealed by the notice-of-claim requirements in the Minnesota Tort Liability Act, which governed claims against "public authorities" and

"public corporations" including HRAs. *McCaleb v. Jackson,* 239 N.W.2d 187, 188–89, 307 Minn. 15, 17–18 (1976); *see also* Act of May 22, 1963, ch. 798, §§ 1, 15, 16, 1963 Minn. Laws 1396, 1396–98, 1402 (codified at §§ 466.01, 466.05 (1965)) (applying notice-of-claim provision to a "public authority" or "public corporation"); Act of May 28, 1987, ch. 291, § 3, subd. 1, 1987 Minn. Laws 1500, 1505 (codified at Minn. Stat. § 469.003, subd. 1 (1987 supp.) stating an HRA is "a public body, corporate and politic"). For these reasons, we do not believe that *Schultz* controls the analysis of subject matter jurisdiction in this case.

Tischer argues that district court jurisdiction can be inferred from section 469.014 because the third sentence mentions the "district court." She bolsters her argument by noting that HRAs generally may "sue and be sued." Minn.Stat. § 469.012, subd. 1a(1) (2004). But sections of a statute must be read together in order to discern the legislature's intent. Minn. Stat. § 645.16 (2004); *Vlahos v. R & I Const. of Bloomington, Inc.,* 676 N.W.2d 672, 679 (Minn.2004). Our reading of section 469.014 as a whole suggests that the purpose of the section is to deal with HRA liability, not district court jurisdiction.

Our interpretation parallels that of the Massachusetts Supreme Judicial Court, which concluded that identical language did not create an exception to a general rule exempting public employers from suits over intentional torts. *Lafayette Place Associates v. Boston Redev. Auth.,* 427 Mass. 509, 694 N.E.2d 820, 835–36 (1998) (characterizing plaintiff's interpretation of the statute as "not in accord with [the] over-all purpose of enacting a comprehensive and uniform regime of tort liability for public employers").[4]

**4.** Even if the plain meaning of section   469.014 could not be readily ascertained, the

Tischer points to other situations, such as the Minnesota Whistleblower and Human Rights Acts, where the legislature has provided that aggrieved public employees may bring a civil action in district court to recover damages or redress discrimination. But, the fact that these other statutes specifically authorize civil actions compels the conclusion that, had the legislature intended to permit HRA employees to bring employment claims in district court, the legislature would have specifically said so, as it did in the Whistleblower and Human Rights Acts.

Finally, Tischer argues that the legislative intent to confer jurisdiction on the district court can be inferred from the fact that the typical record of an employment action by an HRA is not suitable for appellate review. She points out that the record of her employment termination is too sparse for certiorari review, containing only a letter to her from the HRA's attorney and a series of city resolutions that justify why the city consolidated its development efforts but do little to explain why Tischer's position was eliminated while three other HRA employees were guaranteed future employment. She contends that remand to the district court is required so that a suitable record can be made.

■ We observe that the record in administrative cases is often sparse, but we have not considered that fact as defeating certiorari jurisdiction. To the contrary, we have held that the proper procedure for challenging the adequacy of the record to support an administrative decision is to seek a writ of certiorari. *See Dokmo v. Indep. Sch. Dist. No. 11, Anoka–Hennepin,* 459 N.W.2d 671 (Minn.1990). On cer-

tiorari, the court is empowered to order the public body to expand the record or augment its findings or, if those remedies are not appropriate, to reverse the public body's decision because it is not supported by substantial evidence in the record. *See Earthburners, Inc. v. County of Carlton,* 513 N.W.2d 460, 463 (Minn.1994) (ordering remand to county board to "reopen" zoning proceedings, to hear from all interested parties, "and ultimately to allow the board to articulate the reasons for whatever action it takes"); *White Bear Rod & Gun Club v. City of Hugo,* 388 N.W.2d 739, 742–43 (Minn.1986) (remanding to city council "to prepare appropriate findings" on decision regarding special-use permit application); *Foesch v. Indep. Sch. Dist. No. 646,* 223 N.W.2d 371, 376, 300 Minn. 478, 486 (1974) (ordering remand to school board "to take testimony and make findings" on teacher's hiring and whether replacement was qualified); *Carter v. Olmsted County Hous. & Redev. Auth.,* 574 N.W.2d 725, 733 (Minn.App.1998) (reversing decision because evidence offered by the HRA, viewed in light of the record as a whole, does not rise to the level of the substantial evidence necessary to support a termination of [the tenants] section 8 certificate).

We hold that the court of appeals correctly concluded that Minn.Stat. § 469.014 does not confer subject matter jurisdiction on the district court to hear a wrongful termination claim of a HRA employee.

II.

Tischer suggests that her claim for wages and benefits is not a wrongful termination claim, but a breach of contract claim over which district courts routinely

legislative history supports the conclusion that the legislature did not intend to confer jurisdiction on the district court. Our analysis reveals that when the legislature adopted

section 469.014 in 1947, it repealed a predecessor statute that specifically provided for district court review. Act of Apr. 23, 1947, ch. 487, § 61, 1947 Minn. Laws 766, 813.

assume jurisdiction. We addressed Tischer's argument in *Willis,* where a terminated county employee sued for wrongful discharge, breach of contract, disability discrimination, and defamation. We held that the claim should be viewed as one for wrongful employment termination, stating:

> Regardless that the claim is cloaked in the mantle of breach of contract, when the alleged breach of the employment contract of a governmental employee results in termination of the claimant's employment by an executive body which does not have statewide jurisdiction—for example, a county—the claimant may contest the employer's action by certiorari alone, absent statutory authority for a different process.

*Willis,* 555 N.W.2d at 282.

██ In practical application, breach of contract is not a separate claim but is simply one theory of relief that may be included under the umbrella of a wrongful employment termination claim. Others may include the violation of the Human Rights Act and the Whistleblower Act. Although the legislature has specifically conferred jurisdiction on the district court for claims based on the Human Rights Act or the Whistleblower Act, it has not done so for claims of wrongful termination of employment that are based on the theory of breach of contract. Therefore, we reiterate the rule that when a public employee's claim of breach of an employment contract is inevitably centered on the executive body's decision to discharge her, it will be viewed as a wrongful employment termination claim for jurisdictional purposes and certiorari is the exclusive remedy for judicial review of that claim.

Affirmed.

Dissenting, ANDERSON, PAUL H., and PAGE, J.J.

## DISSENT

ANDERSON, PAUL H., Justice (dissenting).

I must respectfully dissent from the majority's conclusion that appellant Sandy Tischer's civil breach of contract action is controlled by *Dokmo* and *Dietz. See Dokmo v. Indep. Sch. Dist. No. 11,* 459 N.W.2d 671 (Minn.1990); and *Dietz v. Dodge County,* 487 N.W.2d 237 (Minn.1992). Further, to the extent that the majority holding is mandated by *Willis,* I conclude that *Willis* should be overruled. *Willis v. County of Sherburne,* 555 N.W.2d 277 (Minn.1996).

Upon reflection, I have concluded that the dissents of Justice Gardebring in *Dietz* and Chief Justice Keith in *Willis* articulate the better legal analysis of this issue. As Justice Gardebring said in her dissent in *Dietz:* "administrative decisions made by the executive branch of government are entitled to deference"; but the result—in *Dietz*—is not only harsh, it "exalts form over substance" and effectively denies persons in Tischer's position any meaningful appellate review. *Dietz,* 487 N.W.2d at 241 (Gardebring, J., dissenting). Moreover, as Chief Justice Keith said in *Willis,* our holding in *Dietz* was not "intended to give governmental bodies the right to breach their employment contracts free from judicial intervention." *Willis,* 555 N.W.2d at 283 (Keith, C.J., dissenting). In essence, the majority has by its decision made "second class citizens" out of public employees such as Tischer. *Id.*

At this point, a brief review of the facts is in order. The Cambridge HRA hired Tischer as its Executive Director in 2000. In 2001, the Cambridge City Council began discussing the restructuring of the Cambridge HRA and transferring its powers. On April 15, 2002, the City Council transferred all of the Cambridge HRA's

functions to the city's Economic Development Authority (EDA) effective at 12:01 a.m. on April 16. Three employees of the Cambridge HRA were retained as EDA employees, but Tischer was not retained.

At an "emergency meeting" at 10:47 p.m. on April 15, the Cambridge HRA and Tischer entered into an employment agreement that was signed by Cambridge HRA Chairperson Robert Theis and Tischer. The agreement contained the following provisions:

> Whereas, Sandy Tischer, Executive Director of the Cambridge HRA, shall be employed under contract for a period of 2 years, beginning 11:00 pm April 15, 2002 and ending 11:00 pm April 15, 2004. This contract is legally binding and shall require a buyout in the total amount of her present monthly rate of $3,000.00, not counting future raises should the present structure of The Cambridge HRA change prior to the expiration of the contract.

> Whereas, the following shall also be due and payable:

> 1) Any payable accumulated sick leave

> 2) Any payable accumulated vacation pay

> 3) Pension balance

> 4) Any vacation, pension, or sick leave that would have accumulated under present conditions

On May 7, 2002, after gaining two additional members, the Cambridge HRA by a 4–3 vote amended its bylaws to eliminate Tischer's Executive Director position and terminated Tischer effective May 21, 2002.

Six months later, in November 2002, Tischer commenced a civil action in Isanti County District Court. In Count I of this action, Tischer sought unpaid wages under Minn.Stat. § 181.13 (2004) and in Count II she sought damages for breach of her April 15, 2002 employment contract with the Cambridge HRA. Tischer did not seek reinstatement to her position as Executive Director. The Cambridge HRA moved to dismiss Tischer's action for lack of subject matter jurisdiction on the ground that Tischer did not, within 60 days of her employment termination, appeal her termination by writ of certiorari to the Minnesota Court of Appeals. The district court denied the Cambridge HRA's motion, but on appeal the court of appeals reversed. In its opinion, the court of appeals relied on *Dokmo*, *Dietz*, and *Willis*. *Tischer v. Housing and Redevelopment Auth. of Cambridge*, 675 N.W.2d 361 (Minn.App. 2004).

In *Dokmo*, we held that a challenge to the action of a school district in refusing to reinstate a teacher could only be by certiorari, and not by declaratory judgment action in the district court. *Dokmo*, 459 N.W.2d at 677. We concluded that the district court lacked subject matter jurisdiction to review the school district's action and that a petition for writ of certiorari was the exclusive means of review. *Id.* Our decision in *Dokmo*, an action for the reinstatement of an employee, was based in part upon the constitutional principles of separation of powers which prohibit the judiciary from exercising de novo review of administrative decisions. *Id.* at 674.

In *Dietz*, we held that a petition for writ of certiorari was the exclusive means by which a nursing home administrator terminated by Dodge County could secure judicial review of her wrongful termination claim against the county. *Dietz*, 487 N.W.2d at 240–41. We said that we have

> long held that in the absence of an adequate method of review or legal remedy, judicial review of the quasi-judicial decisions of administrative bodies, if available, must be invoked by writ of certiorari.

*Id.* at 239. As in *Dokmo*, we stated that separation of powers principles limit judicial review of quasi-judicial decisions of the executive branch of government. *Dietz*, 487 N.W.2d at 239.

I conclude that *Dietz* and *Dokmo* do not mandate the result reached by the majority. Tischer's action is only for breach of contract. She is not seeking reinstatement to her position as Executive Director of the Cambridge HRA. Thus, she is not asserting that her employment was wrongfully terminated by the Cambridge HRA. Rather, she seeks ordinary breach of contract money damages in a civil action. She asserts that her rights and the county's liability can and should be determined based upon the validity and terms of her contract rather than the propriety of the Cambridge HRA's exercise of its discretion in terminating her.

By framing her action as one for breach of contract, Tischer finds support in the language we used in *Dietz* when we said Dietz's request for reinstatement and damages for mental anguish

> highlights the fact that her claim is not an ordinary action for failure to perform on a contract for goods or services. The cause of action alleged in Dietz's complaint would require the rights and liabilities of the parties to be fixed not by the terms of the contract, but by the propriety of the county's exercise of discretion in terminating her.

*Id.* at 240. As I interpret *Dietz*, an employee is entitled to pursue monetary damages from a government entity for breach of contract because this issue is separate from the employee's termination. As

Chief Justice Keith said in his dissent in *Willis:* "the factual reasons underlying [the employee's] termination will not be in issue." *Willis*, 555 N.W.2d at 284 (Keith, C.J., dissenting). Tischer's action does not require the court to delve into the Cambridge HRA's justifications for terminating Tischer's employment and therefore falls outside the scope of our decision in *Dietz*. Our decision in *Willis* is more problematic and, to the extent that *Willis* prevents Tischer from pursuing her breach of contract action, I conclude that it should be overruled.

To engage in a proper review of Tischer's breach of contract action, we would need to determine whether Tischer had a valid contract and whether it was breached by the Cambridge HRA. But we are not in a position to perform this task because all we have before us are some resolutions and meeting minutes.[5] Justice Gardebring said in her dissent in *Dietz*, there are "serious problems" with the application of the principles for review by certiorari when applied to an employment contract case, and that it "takes deference to an unreasonable extreme." *Dietz*, 487 N.W.2d at 241. Again, as Justice Gardebring said in *Dietz:*

> There is no reason why our duty of deference to a co-equal branch of government precludes us from deciding [whether appellant had a contract and whether it was breached]. It is not our role to second-guess the county's decision, so long as there is evidence in the record to support it. But at the same time, it is entirely inappropriate for us to approve of contracts being breached,

---

**5.** Historically, review by writ of certiorari is limited to looking at the legal import of the facts in the record and determining whether there was a reasonable basis for the lower tribunal's decision. Stefan A. Riesenfeld, John A. Bauman, and Richard C. Maxwell, *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota*, 33 Minn. L.Rev. 685, 707–10 (1949). *See Dietz*, 487 N.W.2d at 241 (Gardebring, J., dissenting).

whether by a government agency or anyone else.

*Id.* We must keep in mind that it is within the power, oftentimes within the discretion, of the government entity to make an adequate record. By our decision in *Willis* and here today, we have essentially established a system by which a government entity can shield itself from any meaningful review of its actions under an employment contract.

There are genuine issues of material fact regarding Tischer's breach of contract action. She is entitled to a forum in which she can make a record which, upon appeal, would provide us with a meaningful basis to make a decision. Anything less would result in us blindly deferring to a government entity's decision. Tischer is entitled to have her breach of contract action heard on its merits; therefore, I would reverse the court of appeals and uphold the district court's decision denying the city's motion to dismiss for lack of jurisdiction.

PAGE, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.