*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0990**


Bio Wood Processing, LLC,
Relator,

vs.

Rice County Board of Commissioners,
Respondent.

**Filed April 13, 2015
Reversed and remanded
Johnson, Judge**

Rice County Board of Commissioners


Dustan J. Cross, Matthew C. Berger, Gislason & Hunter LLP, New Ulm, Minnesota (for relator)

Paul D. Reuvers, Nathan C. Midolo, Iverson Reuvers Condon, Bloomington, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**JOHNSON**, Judge

Bio Wood Processing, LLC, applied for an amended conditional-use permit that would be less restrictive than an existing conditional-use permit. The Rice County Planning Commission recommended that the Rice County Board of Commissioners deny the application. The board followed the recommendation by denying the application. We conclude that the county did not comply with a county ordinance that requires the planning commission to make formal findings of fact on the record. Therefore, we reverse and remand for further proceedings.

## FACTS

Bio Wood recycles wood products into animal bedding and mulch. Bio Wood conducts its operations at one facility in Rice County, near the city of Faribault, in a location that the county has determined to be within the urban-reserve zoning district. In that zoning district, the county designates the operations of agriculturally oriented businesses such as Bio Wood as conditional uses, which require a conditional-use permit (CUP). Rice County Zoning Ordinance (RCZO) §§ 503.05, 508.05 (2012).

In September 2011, Bio Wood applied for and was granted a CUP. The CUP allowed the company to grind wood material between 8:00 a.m. and 5:00 p.m., Monday through Friday, and between 8:00 a.m. and 12:00 p.m. on Saturdays. The CUP contained no other restrictions on Bio Wood's hours of operation.

In the summer of 2013, Bio Wood applied for an amended CUP. Bio Wood sought to amend the existing CUP in various ways, including an expansion of its wood-

grinding hours. The county planning commission voted to recommend approval of the application with an expansion of wood-grinding hours to allow a half hour of machinery warm-up time beginning at 7:30 a.m. The county board approved the amended CUP but restricted all of Bio Wood's operations to the hours of 7:00 a.m. to 10:00 p.m., Monday through Friday, and 7:00 a.m. to 3:00 p.m. on Saturdays.

In April 2014, Bio Wood applied for a second amended CUP. Bio Wood sought to amend the existing CUP by proposing a new set of conditions that did not include any restrictions on its hours of operation. The planning commission considered Bio Wood's application at a public hearing on May 1, 2014. After receiving comments from Bio Wood representatives and residents living near Bio Wood's facility, the planning commission discussed the application. A member of the planning commission moved to recommend that the application be denied. By a voice vote, the planning commission unanimously approved the motion to recommend denial of the application.

At some time between May 1, 2014, and May 13, 2014, a written report of the planning commission was prepared and submitted to the board in preparation for the board's May 13, 2014 meeting. The report is a one-page document, entitled "Findings of Fact," with seven enumerated paragraphs of factual findings.

On May 13, 2014, the board considered Bio Wood's application at a public hearing. A board member moved to adopt the planning commission's recommendation to deny Bio Wood's application for a second amended CUP. By a voice vote, the board unanimously approved the motion to adopt the recommendation to deny the application. On the same date, the chair of the board signed a written resolution that reflected the

3

board's denial of the application and incorporated the seven findings of fact that had been submitted to the board. A county staff person certified the resolution as correct on June 10, 2014, and the resolution was filed with the county recorder the following day.

Bio Wood appeals by way of a writ of certiorari.

## D E C I S I O N

Bio Wood argues that the county erred by denying its application for an amended CUP. Bio Wood's challenge is multi-faceted. It argues that (1) the planning commission failed to make findings of fact on the record, (2) the board failed to engage in reasoned decision-making, (3) the board's findings are not supported by the factual record, and (4) the board treated similarly situated applicants differently.

A county's land-use decisions are quasi-judicial in nature and, thus, may be reviewed on a writ of certiorari. *Big Lake Ass'n v. Saint Louis Cnty. Planning Comm'n*, 761 N.W.2d 487, 490 (Minn. 2009); *Interstate Power Co., Inc. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn. 2000). On a writ of certiorari, our review is

> limited to an inspection of the record of the inferior tribunal in which the court "is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it."

*Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992) (quoting *State ex rel. Ging v. Board of Educ. of Duluth*, 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942), *overruled on other grounds*, *Foesch v. Independent Sch. Dist. No. 646*, 300 Minn. 478, 223 N.W.2d 371 (1974)).

4

We begin by analyzing Bio Wood's first argument, which effectively challenges the "regularity" of the county's "proceedings." *See id.* Bio Wood's argument is based on the following county ordinance:

> A public hearing on the application shall be held by the Planning Commission after the application has been certified as complete. The Planning Commission shall make its report to the County Board recommending approval with conditions, or disapproval of the proposed conditional use permit.
>
> . . . .
>
> *The report from the Planning Commission to the County Board shall take the form of formal findings on the record.*

RCZO §§ 503.05(H)(3), (8) (emphasis added).

Bio Wood contends that the county did not comply with this ordinance because the planning commission failed to make "formal findings on the record." In response, the county points to the planning commission's written report, which contains findings of fact. But, as the county concedes, those findings were prepared by county staff after the planning commission's May 1, 2014 hearing and were neither announced nor approved by the planning commission during one of its meetings. The county nonetheless contends that "the ordinance does not require a planning commission member actually write the findings themselves or that the findings be read aloud on the record verbatim."

The parties' respective arguments are based on different interpretations of the phrase "formal findings on the record," as it appears in section 503.05(H)(8) of the county's ordinances. We interpret an ordinance in the same manner as a statute. *In re*

5

*Haslund*, 781 N.W.2d 349, 354 (Minn. 2010). In doing so, our "primary objective" is "to ascertain and give effect to the intention" of those who enacted the ordinance. *See Greene v. Commissioner of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 721 (Minn. 2008). "The principal method of determining" that intent is "to rely on the plain meaning" of an ordinance, which may be discerned by reference to the ordinary meaning of words used in the ordinance as well as rules of grammar and syntax and the structure of the statute. *See State v. Thompson*, 754 N.W.2d 352, 355 (Minn. 2008); *Occhino v. Grover*, 640 N.W.2d 357, 359-60 (Minn. App. 2002), *review denied* (Minn. May 28, 2002). On certiorari review, we apply a *de novo* standard of review to matters of the interpretation of a statute or an ordinance. *Braatz v. Parsons Elec. Co.*, 850 N.W.2d 706, 710 (Minn. 2014).

The phrase "on the record" is not defined within the Rice County Ordinances. In the judicial context, the phrase typically is used to refer to something that occurs or is spoken in open court and later is reflected in a transcript of the proceedings. *See Garner's Dictionary of Legal Usage* 757 (3d ed. 2009) (sense C); *see, e.g.*, *State v. Newcombe*, 412 N.W.2d 427, 429 (Minn. App. 1987) (referring to statements made "on the record"), *review denied* (Minn. Nov. 13, 1987). In the present context, the plain language of section 503.05(H)(8) of the county's ordinances should be interpreted to require the planning commission to make formal findings in the course of a public meeting, either by stating them orally or by approving a previously prepared document that includes written findings. In fact, the planning commission employed a notary public at the May 1, 2014 meeting, and he later prepared a partial transcript, which

6

includes a certification "that the foregoing is a true and correct transcription of said portion of" the planning commission's meeting. But nowhere in that transcript is there any mention of the findings of fact that later appeared in the planning commission's written report, nor is there any mention of a document on which those findings are printed. The county did not satisfy the plain language of section 503.05(H)(8) of the county's ordinances because county staff prepared written findings after a planning commission meeting and submitted the written findings to the county board, without the planning commission ever formally adopting the findings "on the record," either at the prior meeting or a subsequent meeting. Thus, we agree with Bio Wood that the county did not comply with section 503.05(H)(8) when it considered Bio Wood's application for a second amended CUP.

Having concluded that the county failed to follow the procedures in section 503.05(H)(8) of its ordinances, we next must determine the appropriate remedy. A county's failure to make valid findings may be grounds for reversal and remand for further proceedings by which valid findings may be made. For example, in *White Bear Rod & Gun Club v. City of Hugo*, 388 N.W.2d 739 (Minn. 1986), the supreme court reversed the city's decision to deny a special-use permit because the city failed to make appropriate findings supporting its decision. *Id.* at 742-43. The supreme court remanded the matter to the city council for preparation of "appropriate findings for its decision." *Id.* at 742. A similar remedy is warranted in this case.

Thus, we reverse the county board's decision to deny Bio Wood's application for a second amended CUP, and we remand the matter to the county for further proceedings in

compliance with the county's ordinances.  In light of Bio Wood's success on its first argument, we need not consider its remaining arguments.

**Reversed and remanded.**