PARADIGM ENTERPRISES,
INC., Respondent,

v.

WESTFIELD NATIONAL
INSURANCE CO.,
Appellant.

No. A07–635.

Court of Appeals of Minnesota.

Sept. 11, 2007.

Jeffrey R. Hannig, Hannig & Associates, P.A., Fargo, ND, for respondent.

Richard P. Wright, Cheryl Hood Langel, McCollum, Crowley, Moschet & Miller, Ltd., Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; MINGE, Judge; and HUDSON, Judge.

## OPINION

MINGE, Judge.

Appellant-insurer challenges the district court's grant of summary judgment in favor of respondent-employer for claimed overpayment of respondent's workers' compensation insurance premium. Because the district court did not err in interpreting Minn.Stat. § 176.041, subd. 1(g) (2006), or in construing the parties' insurance contract, we conclude that overpayment occurred, and we affirm.

## FACTS

Respondent Paradigm Enterprises, Inc. (Paradigm) is the employer and the insured. Glen and Ron Morken each own at least 25% of the stock of and are executives of Paradigm. Under the Minnesota Workers' Compensation Act, respondent is required to compensate its employees for injuries or death arising in the course of employment, without regard to the question of negligence. Minn.Stat. § 176.021, subd. 1 (2006). Unless it elects to do so, respondent is not required to so compensate executive officers who own 25% of the closely-held corporation's stock, as long as respondent had less than 22,880 payroll hours in the preceding calendar year. Minn.Stat. § 176.041, subd. 1(g).

Respondent purchased workers' compensation insurance from appellant Westfield National Insurance Company to cover its workers' compensation liability. The policy year in question began April 19, 2004, and ended April 19, 2005. No coverage was elected for owner/executives Glen or Ron Morken. Appellant had insured respondent for the 2003–04 policy period without including Glen or Ron Morken. In accordance with its standard business practice, appellant first calculates a preliminary premium for its insured employers based on the risk associated with employee work and the payroll for the previous year. This preliminary premium is billed at the beginning of the policy period. Then, after expiration of the policy period, appellant audits the employer and assesses a final premium based on the actual payroll for the policy period. The final premium may be more or less than the preliminary figure.

Consistent with this practice, appellant prepared a preliminary premium estimate in early 2004 calculating respondent's premium for the 2004–05 policy as $46,359. Because respondent's payroll hours for the 2003 calendar year were less than 22,880 and because respondent had not elected coverage for their compensation, Glen and Ron Morken were excluded in calculating the preliminary premium for the 2004–05 policy year. Respondent paid this preliminary premium in installments.

In the summer of 2005, after expiration of the 2004–05 policy year, appellant conducted a final audit to determine the actual insurance premium owed by respondent for that period. The audit revealed that respondent's payroll hours were in excess of 22,880 for the *2004 calendar* year. Based on this audit, appellant issued respondent a "Premium Adjustment Statement," charging respondent a premium of $73,083 for the 2004–05 policy year. In contrast to the initial estimated premium, this final adjusted premium included workers' compensation coverage for and the compensation paid to Glen and Ron Morken.

Upon receiving notice of the premium adjustment, respondent started paying the deficiency to appellant in installments. However, after learning of the exception included for officers of closely-held corporations in Minn.Stat. § 176.041, subd. 1(g), respondent ceased making payments and filed suit seeking reimbursement for the "overpaid premium." Respondent moved for, and the district court granted, summary judgment awarding respondent $24,557.55 plus interest for an overpaid portion of respondent's insurance premium. This appeal follows.

## ISSUES

I. Did the district court err in interpreting Minn.Stat. § 176.041, subd. 1(g) (2006)?

II. Did the district court err in construing the scope of the parties' insurance contract as extending no further than the workers' compensation coverage mandated under the Minnesota Workers' Compensation Act?

## ANALYSIS

■ On appeal from summary judgment, we consider two questions: "(1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). No genuine issue of material fact exists when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (quotation omitted).

■ When there are no genuine issues of material fact, we are faced with pure legal issues, and we need not defer to the district court's decision. *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Here, because the parties agree that there are no genuine issues of material fact, we review the district court's interpretation of the relevant statutory provisions and the parties' contract de novo. *Camacho v. Todd & Leiser Homes,* 706 N.W.2d 49, 53 (Minn. 2005); *Yang v. Voyagaire Houseboats, Inc.,* 701 N.W.2d 783, 788–89 (Minn.2005).

I.

The first issue is whether the district court erred in interpreting Minn.Stat. § 176.041, subd. 1(g) (2006). Before addressing this statutory-interpretation issue, we note that on appeal appellant does not clearly challenge the district court's interpretation of that statute. Rather, appellant focuses its appeal on the claim that the district court erred in interpreting the insurance policy. However, because workers' compensation insurance policies are written in the context of the Minnesota Workers' Compensation Act (*see* Minn. Stat. § 176.185, subd. 3 (2006)), the language of the Act is important to our interpretation of the parties' insurance contract.

■ Basic standards for statutory interpretation have been codified. *See* Minn.Stat. ch. 645 (2006). The goal of statutory interpretation is to effectuate the intent of the legislature. Minn.Stat. § 645.16; *Educ. Minn.-Chisholm v. Indep. Sch. Dist. No. 695,* 662 N.W.2d 139, 143 (Minn.2003). If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language. *Molloy v. Meier,* 679 N.W.2d 711, 723 (Minn. 2004). If a statute is ambiguous, we apply other canons of construction to discern the

legislature's intent. *See* Minn.Stat. §§ 645.08, 645.16, 645.17 (2006); *Gomon v. Northland Family Physicians, Ltd.,* 645 N.W.2d 413, 416 (Minn.2002).

■ The Minnesota Workers' Compensation Act defines "[e]mployee" as including "an executive officer of a corporation, except those executive officers excluded by section 176.041." Minn.Stat. § 176.011, subd. 9(7). The Act further provides that the coverage requirements of the Act do not apply to

> an executive officer of a closely held corporation having less than 22,880 hours of payroll in the preceding calendar year if that executive officer owns at least 25 percent of the stock of the corporation[.]

Minn.Stat. § 176.041, subd. 1(g).

In the case before us, the critical question is the meaning of "preceding calendar year." *Id.* Appellant argues that "preceding calendar year" refers to the year prior to final calculation of the insurance policy premium and that because final calculation was made in the spring of 2005, the preceding year is the calendar year 2004. Pursuant to its interpretation, appellant argued to the district court that because respondent's payroll hours exceeded 22,880 hours in the calendar year 2004, respondent was required to carry workers' compensation coverage for executive officers Glen and Ron Morken in the 2004–05 policy year. The district court disagreed, concluding that "preceding calendar year" refers to the year 2003, which is the full calendar year preceding the April 19, 2004, effective date of policy coverage.

The context of Minn.Stat. § 176.041 within the greater Workers' Compensation Act is crucial to our interpretation of "preceding calendar year" in subpart (g) of that statute. Minn.Stat. § 176.041 identifies who are employees for purposes of

workers' compensation insurance coverage. Subdivision 1 enumerates 21 employment categories that are excluded from the Act's requirements. *Id.* Subdivision 1a then goes on to provide the means by which employers may elect insurance coverage greater than that required under the Act. *Id.*, subd. 1a. Specifically, subdivision 1a provides:

> Notice of election of coverage or of termination of election under this subdivision shall be provided in writing to the insurer. Coverage or termination of coverage is effective the day following receipt of notice by the insurer.... The insurance policy shall be endorsed to indicate the names of those persons for whom coverage has been elected or terminated under this subdivision.

*Id.*

The clear purpose of Minn.Stat. § 176.041 is to define the scope of mandatory insurance coverage and provide for the means by which employers may elect greater coverage. One would expect parties to agree to the scope of policy coverage before the policy actually takes effect. The only reasonable interpretation of subpart (g) of subdivision 1 is that "preceding calendar year" refers to the calendar year preceding the policy's effective date.

To construe "preceding calendar year" as the year preceding calculation of the final insurance premium, as appellant urges, would mean that insurers, insured employers, and employees would defer determination of the scope of policy coverage and their corresponding insurance status until after the policy at issue has expired. This is an awkward, if not absurd, result. The result is inconsistent with businesses' interests in predictable and efficient implementation of contractual obligations. Not knowing whether there is workers' compensation insurance coverage, the employer and the executive employees would not know whether alternative insurance is necessary. This could lead to purchase of duplicative insurance coverage and possibly disputes over primary coverage and subrogation or, perhaps worse, no insurance. Although this problem could be avoided by the employer electing optional coverage, under the law employers and executive owners are given the flexibility to limit the reach of the workers' compensation requirement. Employers and executive employees may conclude such coverage is not desirable. The law should be interpreted to function in a workable manner.

In the course of this proceeding, appellant has asserted that the district court's interpretation of "preceding calendar year" as the year preceding the policy's *effective* date undermines the insurance industry's standard method of calculating premiums. Appellant's argument is unpersuasive. The interpretation that the district court made and with which we agree does not complicate the calculation of premiums. Here, looking back to the 2003 calendar year should not be harder than using the 2004 calendar year. If anything, our interpretation should simplify the calculation and make coverage more predictable.

## II.

The next issue is whether the district court erred in interpreting the scope of the parties' insurance contract to extend no further than the minimum workers' compensation coverage mandated under the Minnesota Workers' Compensation Act.

 We note that appellant only marginally referred to the scope of the contract's coverage in its arguments to the district court. Generally, we will not consider matters not argued and considered in the district court. *See Thiele v. Stich*, 425

N.W.2d 580, 582 (Minn.1988). However, because: (1) the issue was mentioned; (2) we consider it important to fully address appellant's challenge to the district court's ruling; and (3) our interpretation of the parties' contract presents a legal issue for which further development of the record is not required; we consider whether the parties' insurance contract extends coverage and premium liability beyond the minimum required under the Act.

 "[T]he primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc., v. Arctic Cat Sales, Inc.,* 666 N.W.2d 320, 323 (Minn.2003). Where there is a written agreement, we determine the parties' intent based on the plain language of the document. *Metro. Sports Facilities Comm'n v. Gen. Mills, Inc.,* 470 N.W.2d 118, 123 (Minn.1991). "[W]hen a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Travertine Corp. v. Lexington–Silverwood,* 683 N.W.2d 267, 271 (Minn.2004).

 The parties' insurance contract describes the method used to calculate the cost to insure respondent as follows:

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates *that lawfully apply* to the business and work covered by this policy.

(Emphasis added.) The policy states that the premium basis used to calculate estimated and actual premiums

includes payroll and all other remuneration paid or payable during the policy period for the services of ... *all your*

*officers* and employees *engaged in work covered by this policy* [.]

(Emphasis added.) Appellant relies on these policy provisions for the proposition that the parties contracted to extend insurance coverage beyond the Act's minimum requirements to include Glen and Ron Morken.

In analyzing these provisions, we note that the first quoted provision only describes the process by which appellant calculates insurance premiums: assessing a preliminary estimate followed by a final premium calculated on the insured's actual payroll hours. This provision does not purport to define the policy's scope of coverage.

Appellant asserts that the second quoted contractual provision is determinative and that the phrase "all your officers" extends the liability for premiums (and presumably coverage) beyond the minimum, default coverage required by the Workers' Compensation Act. The appellant's argument begs the question. The policy language does not simply provide that the premium includes all compensation payable during the policy period for the services of all of respondent's officers and employees. If that was the case, our interpretation of the parties' insurance contract may be different. Rather, the policy states that its premium basis is for "all your officers and employees *engaged in work covered by this policy* [.]" (Emphasis added.) The text of this provision does not define the scope of the policy's coverage, so appellant's reliance on this provision is misplaced. We are still left with the question of what work is "covered by this policy."

The plain language of Minn.Stat. § 176.041, subd. 1a, makes clear that absent the parties' election to provide workers' compensation insurance coverage greater than the Minnesota Workers' Compensation Act's minimum coverage re-

quirements, the coverage is defined in the Act. Here, the parties' contract contains no such election for Glen and Ron Morken. In fact, the policy limits the insurer-appellant's obligation to the payment of "benefits required ... by the workers['] compensation law." Moreover, in accordance with the law, the policy contains a special schedule that explicitly elects greater coverage for officers Russel, Jennifer, Chris, Brianne, and Kaleb Morken, stating that the policy's premium basis "includes the remuneration on such persons." By explicitly including these officers, it implicitly excludes those not listed in the contract. Without an election to provide coverage for Glen and Ron Morken, the Act provides the operative definition of coverage.

As already discussed, the Act does not include coverage for officers of closely-held corporations who own more than 25 percent of the corporation's stock, when the corporation had less than 22,880 payroll hours in the year preceding the insurance policy's effective date of coverage. Minn. Stat. § 176.041, subd. 1(g). Here, it is undisputed that officers Glen and Ron Morken each owned more than 25 percent of respondent's corporation, that respondent-employer did not elect coverage for them, and that respondent had less than 22,880 payroll hours in the 2003 calendar year. Also, we have concluded that 2003 is the year preceding the effective date of policy coverage. Accordingly, we conclude that the premium due under the 2004–05 policy period may not be based on the compensation paid Glen and Ron Morken. We further conclude that the district court did not err in determining that respondent overpaid premiums and that appellant was required to repay certain amounts plus interest for the 2004–05 policy year.

## DECISION

Because we conclude that the district court did not err in interpreting Minn.Stat.

§ 176.041, subd. 1(g) (2006), in construing the parties' insurance contract, and in ordering appellant to refund overpayment of premiums plus interest, we affirm.

**Affirmed.**