**Kjell J. RODNE, Relator,**

v.

**COMMISSIONER OF HUMAN SERVICES, Respondent.**

No. C3–95–2202.

Court of Appeals of Minnesota.

May 14, 1996.

Michael S. Gerlach, Running & Gerlach, Duluth, for Relator.

Hubert H. Humphrey, III, Attorney General, Kim Buechel Mesun, Assistant Attorney General, St. Paul, for Respondent.

Considered and decided by HARTEN, P.J., and HUSPENI and PETERSON, JJ.

## OPINION

PETERSON, Judge.

Following an investigation of an incident involving relator Kjell Rodne, the Department of Human Services (DHS) disqualified him from holding any position allowing direct

contact with persons who receive services from DHS-licensed programs. Rodne requested reconsideration. Upon reconsideration, the Commissioner of Human Services determined that the information gathered during the investigation is accurate and complete, and the director of the DHS's licensing division determined that Rodne did not demonstrate that he does not pose a risk of harm to persons receiving services from the DHS. The disqualification was not set aside.

## FACTS

Northwood Children's Home West is a residential treatment facility for emotionally and developmentally disturbed youths. Northwood is licensed by the DHS.

Rodne was Northwood's administrator. Four team supervisors, including supervisor Patricia Matejka, reported to a program director, who reported to Rodne.

On January 8, 1995, Rodne was off-duty and at home. He was neither on call nor equipped with a pager. The temperature on that day was zero degrees, with a 30–degree–below–zero windchill factor.

At approximately 2:30 or 2:45 p.m., Rodne received a telephone call from Matejka, who was on call that weekend. Matejka reported to Rodne that a senior counselor, L.S., and an inexperienced counselor, S.M., had taken ten boys from Northwood in a van to Gooseberry Falls State Park. L.S. had let several boys out of the van, and the boys had left the van and had not returned.

Rodne asked Matejka to get more information and call him back. Neither Rodne nor Matejka contacted law enforcement authorities. Matejka called Rodne again at some point between 2:45 and 3:15 p.m. Rodne learned that L.S. had allowed several boys to get out of the van alone, that L.S. and the remaining boys had gone to look for the missing boys, and that when L.S. brought some of the boys back to the van, he stated that things were "under control."

Matejka told Rodne that she had sent two experienced counselors to assist L.S. and S.M. Rodne believed that the situation was under control, and he left his home for a previously-scheduled meeting, leaving a forwarding number in case of an emergency.

Some of the boys had been in the woods since approximately 11:45 a.m. Most of the boys were not appropriately dressed for winter. Except for one boy, who was wearing a snowmobile suit and boots, the boys were dressed in tennis shoes and light jackets and were not wearing hats or gloves. One boy was wearing shorts.

Some of the boys were discovered soon after they had left the van. Two boys found their way back to the van at about 4:20 p.m., but were not taken to a hospital emergency room until approximately 6:15 p.m. Shortly after 4:20, another boy was found. He was admitted to the emergency room at 5:30 p.m. Two boys were picked up by a community resident and were admitted to a hospital at 5:15 p.m.

One boy was treated for second-degree frostbite on both feet, which resulted in blistering. Another boy had first-degree and second-degree frostbite to both feet, which developed blistering. One boy had frostbite from the lower ⅓ of his calves to his feet. His shoes were frozen to his feet, and he had mild hypothermia. Another boy had a sprained ankle. Three other boys had frostbite or "frost nip" to both feet.

At approximately 6:00 p.m., when Rodne learned more details about the incident, he went to Northwood and ordered that the remaining boys be taken to the hospital for examination.

The incident was reported to the DHS. An investigation by the DHS resulted in an investigation memorandum, which stated that Rodne and Matejka were

culpable for neglect by failure to protect children from conditions or actions which imminently and seriously endangered the children's physical and mental health when reasonably able to do so.

According to the memorandum, Rodne and Matejka actively decided not to notify law enforcement authorities about the situation.

As a result of the investigation, the DHS's licensing division notified Rodne that he was disqualified from holding any position that allows direct contact with persons receiving

services from DHS-licensed programs. Rodne requested reconsideration of the disqualification decision, claiming that the information relied upon by the Commissioner is incorrect. Rodne claimed that he did not know the boys were inappropriately dressed, he did not know how long they had been in the woods, and he did not make an affirmative decision not to call law enforcement authorities. Rodne also claimed that he did not pose a risk of harm to persons served by the DHS.

The Commissioner responded to Rodne's request for reconsideration in a letter dated September 15, 1995. The Commissioner stated that the DHS had determined that the data gathered during its investigation are accurate and complete. The Commissioner informed Rodne of his right to appeal this determination to the Commissioner of Administration, pursuant to the Data Practices Act and the Administrative Procedure Act.

In a separate decision, the DHS's licensing division concluded that Rodne did not demonstrate that he does not pose a risk of harm to persons receiving services from the DHS.

## ISSUES

Is the Commissioner's decision that the data in the investigation memorandum are accurate and complete a final appealable decision?

Is the Commissioner's decision that the data in the investigation memorandum are accurate and complete arbitrary, oppressive, unreasonable, or fraudulent, or made under an erroneous theory of law or without any evidence to support it?

## ANALYSIS

### I.

Following its investigation of the January 8, 1995, incident, the DHS concluded that Rodne was a perpetrator of maltreatment of minors under Minn.Stat. § 626.556 (1994). Consequently, pursuant to Minn.Stat. § 245A.04, subd. 3a (1994), the Commissioner notified Rodne that he is disqualified from direct contact with persons receiving services from programs licensed by the DHS. *See* Minn.R. 9543.3070, subpt. 1(C) (1993) (Com-

missioner may disqualify individual identified as perpetrator of serious maltreatment of minors).

After receiving notice of disqualification, an individual who is the subject of an investigation by the DHS "may request reconsideration of the notice of disqualification." Minn. Stat. § 245A.04, subd. 3b(a). The individual must present the request in writing and must present information to show

(1) the information the commissioner relied upon is incorrect; or

(2) the subject of the study does not pose a risk of harm to any person served by the applicant or license holder.

*Id.* The commissioner may set aside the disqualification

if the commissioner finds that the information the commissioner relied upon is incorrect or the [disqualified] individual does not pose a risk of harm to any person served by the [individual].

Minn.Stat. § 245A.04, subd. 3b(b); *see also* Minn.R. 9543.3080, subpt. 3 (1993) (Commissioner shall set aside disqualification if Commissioner determines that information relied upon to make disqualification decision is incorrect or individual does not pose risk of harm to people served by program).

Rodne requested reconsideration and presented information to show that he had limited involvement in the January 8, 1995, incident, that he did not know the boys were inappropriately dressed, that he did not know the boys had been separated from the group for a substantial length of time, and that he did not deliberately fail to contact the appropriate authorities.

In a letter written in response to Rodne's request for reconsideration, the Commissioner stated that the DHS had determined that the information gathered during the investigation is accurate and complete. The Commissioner also stated that Rodne has the right to appeal this determination to the Commissioner of Administration under Minn. Stat. § 13.04, subd. 4 (1994) and Minn.Stat. §§ 14.57 to 14.62 (1994).

Minn.Stat. § 13.04, subd. 4(a) provides:

An individual subject of the data may contest the accuracy or completeness of public or private data. To exercise this right, an individual shall notify in writing the responsible authority describing the nature of the disagreement. The responsible authority shall within 30 days either: (1) correct the data found to be inaccurate or incomplete and attempt to notify past recipients of inaccurate or incomplete data, including recipients named by the individual; or (2) notify the individual that the authority believes the data to be correct. * * *.

The determination of the responsible authority may be appealed pursuant to the provisions of the administrative procedure act relating to contested cases.

■ The DHS argues that Rodne may not appeal the Commissioner's determination that the data presented in the DHS's investigation memorandum are accurate and complete because that determination is not a final agency decision. The DHS contends that Rodne's allegations of factual errors in the DHS's investigation memorandum were treated by the Commissioner as challenges to the accuracy or completeness of data under Minn.Stat. § 13.04, subd. 4. The Commissioner's decision regarding the accuracy or completeness of data may be appealed to the Commissioner of Administration under Minn. Stat. § 13.04, the DHS contends, and it is the decision of the Commissioner of Administration that must be appealed to this court. We disagree.

■ Rodne's request for reconsideration specifically requested reconsideration "by the Commissioner as is allowed for under Minnesota Rules 9543.3080 Subpt. 1(A) in that the information relied upon is incorrect." There was no basis for the Commissioner to treat this request for reconsideration, which was explicitly based on a rule promulgated pursuant to Minn.Stat. § 245A.04, as a challenge to the accuracy or completeness of data brought pursuant to Minn.Stat. § 13.04, subd. 4.

An appeal may be taken to this court "from a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding." Minn.R.Civ.App.P. 103.03(g).

[T]he commissioner's decision to grant or deny a reconsideration of disqualification under [Minn.Stat. § 245A.04, subd. 3b] * * * is the final administrative agency action.

Minn.Stat. § 245A.04, subd. 3b(e); *see also* Minn. R. 9543.3080, subpt. 5 (Commissioner's decision on reconsideration request is final administrative agency action).[1]

Although the DHS incorrectly treated Rodne's request for reconsideration as a challenge to the accuracy or completeness of data pursuant to Minn.Stat. § 13.04, subd. 4, the Commissioner's decision effectively determined that Rodne is disqualified from direct contact with persons served by Northwood. This decision affects Rodne's right to continue working at Northwood and is a final decision made in an administrative proceeding. Therefore, it may be reviewed by this court by writ of certiorari.

## II.

The DHS is not required to conduct a contested case proceeding when an individual requests reconsideration under Minn.Stat. § 245A.04, subd. 3b, and it did not do so when Rodne requested reconsideration. Therefore, Rodne's certiorari appeal is before this court pursuant to Minn.Stat. § 480A.06, subd. 3 (1994) and Minn.Stat. ch. 606 (1994), rather than the Administrative Procedure Act, Minn.Stat. §§ 14.63–.69 (1994).

■ On certiorari appeal from a quasi-judicial agency decision that is not subject to the administrative procedure act, we inspect the record to review

questions affecting the jurisdiction of the [agency], the regularity of its proceedings, and, as to merits of the controversy,

---

1. An exception exists for an employee of an employer as defined in Minn.Stat. § 179A.03, subd. 15, who may request a contested case hearing under chapter 14, the administrative procedure act. Minn.Stat. § 245A.04, subd. 3c; Minn.R.

9543.3080, subpt. 6. The exception was not applicable to Rodne, who was not an employee of a public employer as defined by Minn.Stat. § 179A.03, subd. 15 (1994).

whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it.

*Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992) (quoting *State ex rel. Ging v. Board of Educ.,* 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942), *overruled on other grounds by Foesch v. Independent Sch. Dist. No. 646,* 300 Minn. 478, 485, 223 N.W.2d at 371, 375 (1974)).

In its brief to this court, the DHS stated:

When the Commissioner looks at whether the information DHS relied upon in disqualifying a person is "incorrect" as part of a Request for Reconsideration of the disqualification, she is simply looking to see whether the disqualified person is the actual person described in the information. The best example of this type of incorrectness review is the more typical background study where a person is disqualified based on a criminal conviction contained in a Bureau of Criminal Apprehension ("BCA") record. At times in those situations, it is brought to the attention of the Commissioner that the "John Smith" in the BCA record is not the "John Smith" for whom the background study was done and who as a result was disqualified. If this is shown, the Commissioner disregards the BCA record and the person's disqualification is set aside.

However, using this example and applying the argument that Relator makes, the Commissioner would not find the information incorrect if instead of arguing that the person was not the John Smith of the BCA record, he admitted that he was the John Smith of the BCA record and he was convicted, however, the factual evidence on which he was convicted was incorrect. In such a situation, the Commissioner would deny the person's Request for Reconsideration and suggest to that person that he/she utilize another avenue of review to change the challenged inaccuracy. Such suggested avenues could be either a criminal appeal or a section 13.04 challenge to the accuracy and completeness of data.

We see no basis in Minn.Stat. § 245A.04, subd. 3b for the limited review conducted by the Commissioner when presented with a request for reconsideration. A request for reconsideration under Minn.Stat. § 245A.04, subd. 3b is not the same proceeding as a challenge to the accuracy or completeness of data under Minn.Stat. § 13.04, subd. 4. Under Minn.Stat. § 245A.04, subd. 3b(a)(1), an individual who requests reconsideration of a notice of disqualification on the basis that the Commissioner relied upon incorrect information must present information to the Commissioner to show "the information the [C]ommissioner relied upon is incorrect." The statute does not limit the type of information that the individual may present or restrict the bases upon which an individual may allege that the information relied upon by the Commissioner is incorrect. *Id.*

Rodne argues that the DHS's interpretation of Minn.Stat. § 245A.04, subd. 3b has denied him a meaningful opportunity to have his disqualification reconsidered. We agree. The information Rodne submitted with his request for reconsideration was not considered to determine whether the conclusion that he is a perpetrator of maltreatment is incorrect, and the conclusion that he has not demonstrated that he does not pose a risk of harm to persons receiving services from the DHS rests upon the conclusion that he is a perpetrator of maltreatment.

■ We conclude that when an individual requests reconsideration under Minn.Stat. § 245A.04, subd. 3b, the Commissioner may not simply disregard information submitted with the request. It would be absurd to require an individual who requests reconsideration to present information to show that the information the Commissioner relied upon is incorrect, and then allow the Commissioner to disregard the information presented when deciding whether to set aside the disqualification. *See* Minn.Stat. § 645.17(1) (1994) ("legislature does not intend a result that is absurd, impossible of execution, or unreasonable"). The Commissioner must consider the information submitted with the request for reconsideration and determine whether the information relied upon to disqualify an individual is incorrect.

The Commissioner's determination that the information she relied upon is accurate and complete was made under the erroneous theory of law that the Commissioner may disregard information provided by Rodne in support of his request for reconsideration. We, therefore, remand to permit the Commissioner to consider whether the information submitted by Rodne shows that the information the Commissioner initially relied upon to disqualify Rodne is incorrect and whether, in light of the determination regarding the correctness of information, Rodne poses a risk of harm to persons receiving services from the DHS.

### DECISION

The Commissioner's determination that the data presented in the investigation memorandum are accurate and complete was a final agency decision reviewable by this court. Rodne's request for reconsideration under Minn.Stat. § 245A.04, subd. 3b (a) was not a challenge to the accuracy or completeness of data under Minn.Stat. § 13.04, subd. 4(a). The Commissioner's determination that the information relied upon to disqualify Rodne was correct was made under an erroneous theory of law that the Commissioner could disregard the information presented by Rodne in support of his request for reconsideration. We therefore remand to allow the Commissioner to consider whether the information presented by Rodne shows that the information upon which the Commissioner relied to disqualify him is incorrect and whether, in light of the Commissioner's decision as to the correctness of the information, Rodne poses a risk of harm to persons receiving services from the DHS.

**Remanded.**