*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0271**

Angie Rachel Ford,
Relator,

vs.

Commissioner of Human Services,
Respondent.

**Filed September 8, 2014
Affirmed
Larkin, Judge**

Minnesota Department of Human Services
License No. 1048780 R31

Jonathan Geffen, Arneson & Geffen, PLLC, Minneapolis, Minnesota (for relator)

Lori Swanson, Attorney General, Marsha Eldot Devine, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

In this post-remand appeal, relator challenges a decision refusing to set aside her disqualification to work in a state-licensed facility. Relator asserts that the decision

ignores this court's remand instructions, is arbitrary and capricious, and is not supported by substantial evidence. We affirm.

## FACTS

In 2011, relator Angie Rachel Ford began pursuing a degree in chemical-dependency counseling at Century College. As part of her coursework, she eventually was assigned to an internship at Valhalla Place, which is a chemical-dependency-treatment facility licensed by the Minnesota Department of Human Services (DHS).

On March 14, 2013, respondent commissioner of human services informed Ford that she was disqualified from working at DHS licensed facilities based on her two guilty pleas to misdemeanor theft on September 27, 2006; her guilty plea to misdemeanor theft on December 5, 2006; her two guilty pleas to misdemeanor theft on January 2, 2008; her conviction of misdemeanor theft on April 13, 2009; her conviction of felony fifth-degree controlled substance crime on April 20, 2009, which was subsequently deemed a misdemeanor; her conviction of felony check forgery on May 1, 2009; her conviction of felony theft on August 13, 2009, which was subsequently deemed a misdemeanor; her conviction of misdemeanor theft on August 17, 2009; her conviction of misdemeanor theft on September 21, 2009; and her conviction of felony fifth-degree controlled-substance crime on May 11, 2010.[1]

---

[1] Ford's felony offenses result in a 15-year disqualification period from the time she completes her sentences, including any probationary period. *See* Minn. Stat. § 245C.15, subd. 2 (2012) (listing offenses resulting in a 15-year disqualification, including felony-level check forgery and controlled-substance crime).

Ford requested reconsideration, arguing that she did not pose a risk of harm to Valhalla's clients. On April 8, 2013, the commissioner denied her request. Ford submitted additional information, and on April 26, the commissioner once again denied her request. Ford appealed to this court, arguing that the commissioner's decision was not supported by substantial evidence and was arbitrary and capricious. This court agreed and therefore reversed and remanded "for a determination based on findings and reasoning indicating [the commissioner] appropriately considered relator's individual circumstances." *Ford v. Comm'r of Human Servs.*, A13-0838, 2013 WL 6391181, at *3 (Minn. App. Dec. 9, 2013).

In December 2013, the commissioner issued another decision denying Ford's request for a set-aside. This certiorari appeal follows.

## DECISION

The Department of Human Services Background Studies Act requires DHS to conduct background studies on any person providing direct contact services to persons served by DHS licensed facilities and programs. Minn. Stat §§ 245C.03-.04 (2012). If DHS determines that an individual has been convicted of or has admitted to a crime listed in Minn. Stat. § 245C.15 (2012), the commissioner must disqualify that individual from providing direct services. Minn. Stat. § 245C.14, subd. 1(a)(1) (2012).

An individual who has been disqualified may request reconsideration of the disqualification. Minn. Stat. § 245C.21, subd. 1 (2012). "The commissioner may set aside the disqualification if the commissioner finds that the individual has submitted sufficient information to demonstrate that the individual does not pose a risk of harm to

3

any person served by the applicant . . . ." Minn. Stat. § 245C.22, subd. 4(a) (2012). The

commissioner must consider nine factors, giving "preeminent weight to the safety of each

person served." *Id.*, subds. 3, 4(b) (2012). These factors are

> (1) the nature, severity, and consequences of the event or events that led to the disqualification;
> (2) whether there is more than one disqualifying event;
> (3) the age and vulnerability of the victim at the time of the event;
> (4) the harm suffered by the victim;
> (5) vulnerability of persons served by the program;
> (6) the similarity between the victim and persons served by the program;
> (7) the time elapsed without a repeat of the same or similar event;
> (8) documentation of successful completion by the individual studied of training or rehabilitation pertinent to the event; and
> (9) any other information relevant to reconsideration.

*Id.*, subd. 4(b). Any single factor may be determinative. *Id.*, subd. 3. The individual

requesting the set-aside bears the burden to demonstrate that she does not pose a risk of

harm. *Id.*, subd. 4(b).

The issuance of a final agency decision denying a set-aside request is a quasi-

judicial decision subject to certiorari review. *Rodne v. Comm'r of Human Servs.*, 547

N.W.2d 440, 444 (Minn. App. 1996). This court will "inspect the record to review . . .

whether the order or determination in a particular case was arbitrary, oppressive,

unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to

support it." *Id.* at 444-45 (quotation omitted).

4

**I.**

Before we review the commissioner's remand decision, we clarify the scope of the record on appeal. After the commissioner notified Ford of the commissioner's remand decision, Ford provided the commissioner with additional information to supplement her set-aside request. The commissioner informed Ford that, because her supplemental submission was dated January 30, 2014, it was not part of the record underlying the commissioner's December 2013 decision. Ford asserts that the commissioner should have considered her January 2014 submission and that it should be part of the record on appeal. For the reasons that follow, we disagree.

First, Ford does not cite legal authority to support her assertion that the commissioner was required to consider the post-decision submission. In fact, if an individual is disqualified based on an admission to or conviction of a crime listed in section 245C.15 (disqualifying crimes or conduct)—as is the case here—the commissioner's decision is "the final agency determination for purposes of appeal by the disqualified individual," and the decision is not subject to further administrative review. *See* Minn. Stat. § 245C.27, subd. 1(b) ("The fair hearing is the only administrative appeal of the final agency determination for purposes of appeal by the disqualified individual."), (c) (2012) (stating that individuals disqualified based on an admission to or conviction of a crime under Minn. Stat. § 245C.15, subd. 2, are not entitled to a hearing). Second, because the documents in Ford's January 2014 submission were not considered by the commissioner, we may not consider them on appeal. *See Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn. 1977) ("It is well settled that an appellate court may

5

not base its decision on matters outside the record on appeal, and that matters not produced and received in evidence below may not be considered").[2]

In sum, the record for this appeal is limited to the documents that were available to the commissioner at the time of the commissioner's December 2013 remand decision.

## II.

We next consider Ford's argument that the commissioner did not comply with this court's remand instructions. We review the commissioner's compliance with the remand instructions for an abuse of discretion. *See Janssen v. Best & Flanagan, LLP*, 704 N.W.2d 759, 763 (Minn. 2005) ("Appellate courts review a district court's compliance with remand instructions under the deferential abuse of discretion standard.").

This court instructed the commissioner to make a determination based on findings and reasoning indicating that the commissioner "appropriately considered relator's individual circumstances, including both her evidence of sobriety and the risk of harm she poses considering the nature of her requested set-aside." *Ford*, 2013 WL 6391181, at *3. Our decision focused on Ford's stated reason for the requested set-aside. *Id.* Ford had explained that she was seeking a set-aside so she could complete an internship that was required as part of her pursuit of a degree in chemical-dependency counseling. *Id.* In remanding, we reasoned that "[r]elator would be fully supervised at this internship, and would not be working in the capacity of a chemical-dependency counselor" and that

---

[2] Ford included the documents from her January 2014 submission in the appendix to her appellate brief. The commissioner states that this court should strike these documents. A request for an order from this court must be by motion unless otherwise authorized by the rules of appellate procedure. Minn. R. Civ. App. P. 127. Because there is no motion pending before this court, we do not consider this form of relief.

"[t]he commissioner's decision fails to reflect that [the commissioner] considered these specific circumstances." *Id.* at *2. Thus, our decision assumed that Ford's requested set-aside would be limited to an internship position and conditioned on supervision. *Id.* (stating that the commissioner's decision "does not recognize that relator would be working in a supervised internship").

On remand, the commissioner specifically addressed the purported limited nature of Ford's requested set-aside. The commissioner noted that under Minn. Stat. § 245C.22, subd. 5 (2012), a set-aside allows an individual to "have direct contact with, or access to, persons receiving services" at the specified program or agency. The commissioner explained that "[t]he law provides no authority for the Commissioner to place limitations or restrictions on this direct contact" and Ford "would necessarily be legally permitted to work [at Valhalla] in any capacity, for any length of time, unsupervised and without restrictions."

The commissioner further explained that under Minn. Stat. § 245C.30 (2012), the commissioner can grant time-limited variances with conditions. A variance may be granted if the commissioner has not set aside an individual's disqualification and if "there are conditions under which the disqualified individual may provide direct contact services or have access to people receiving services that minimize the risk of harm to people receiving services." Minn. Stat. § 245C.30, subd. 1(a). A variance would result in the type of limited, conditional set-aside that this court seems to have envisioned when it reversed and remanded. But the commissioner must grant a variance to the license holder (i.e., Valhalla), *id.*, and although the commissioner notified Valhalla of this

7

possibility, there is nothing in the record to indicate that Valhalla has requested a variance.

As to Ford's evidence of sobriety, the commissioner noted that Ford stated that she "completed treatment in 2002" and had been sober since 2009. But the commissioner concluded that these circumstances did not weigh in Ford's favor because (1) Ford's disqualifying offenses occurred after she completed treatment, (2) Ford had not paid back all of her victims as required by her probation, and (3) Ford committed multiple probation violations, the most recent of which followed her stated sobriety date. The commissioner "commend[ed] the recent efforts" Ford has made, but concluded that they did not outweigh the number of disqualifying offenses, the short time that had elapsed since conviction of those offenses, and the pattern of continuing dishonest behavior demonstrated by Ford's recent nondisqualifying conviction for voter fraud.

Ford criticizes the commissioner's focus on her 2002 treatment-completion date as opposed to her reported 2009 sobriety date. But the commissioner must consider "documentation of successful completion by the individual studied of *training or rehabilitation* pertinent to the event." Minn. Stat. § 245C.22, subd. 4(b) (emphasis added). Because this factor specifically instructs the commissioner to consider training or rehabilitation, the commissioner's focus on Ford's 2002 treatment-completion date is consistent with the requirement of the statute and satisfies our remand instructions.

This court also expressed concern that the commissioner "summarily dismissed" Ford's letters of support. *Ford*, 2013 WL 6391181, at *3. On remand, the commissioner explained that although Ford submitted 16 recommendation letters, 12 of the letters were

8

unsigned, implying that the commissioner did not find the letters credible and therefore did not find them persuasive. The commissioner also noted that some of Ford's disqualifying offenses occurred during the time that she was working for some of the individuals who provided the letters. The commissioner's explanation satisfies us that the commissioner properly considered Ford's letters of support on remand.

In sum, we directed the commissioner to "take a 'hard look' at [Ford]'s evidence" on remand. *Id.* at *2. In response, the commissioner considered and addressed Ford's evidence in the context of the nine statutory factors that govern the commissioner's decision. *See* Minn. Stat. § 245C.22, subd. 4(b). The commissioner explained her reasoning regarding each of the nine factors and identified the following five factors as determinative: the nature, severity, and consequences of the events that led to the disqualification; the number of disqualifying events; the time elapsed without a repeat of a same or similar event; documentation of successful completion of training or rehabilitation; and other relevant information. The commissioner also explained that a time-limited conditional set-aside is not possible and provided information regarding a variance to achieve that result. We are satisfied that the commissioner took a hard look at the evidence and otherwise complied with our remand instructions.

### III.

Lastly, we consider Ford's arguments that the commissioner's remand decision is not supported by substantial evidence and is arbitrary and capricious. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Minneapolis Van & Warehouse Co. v. St. Paul Terminal*

9

*Warehouse Co.*, 288 Minn. 294, 299, 180 N.W.2d 175, 178 (1970) (quotation omitted). An "agency's conclusions are not arbitrary and capricious so long as a rational connection between the facts found and the choice made has been articulated." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn. 2001) (quotation omitted). This court will reverse the decision of an administrative agency "where there is a combination of danger signals which suggest the agency has not taken a 'hard look' at the salient problems and the decision lacks articulated standards and reflective findings." *Cable Commc'ns Bd. v. Nor-West Cable Commc'ns P'ship*, 356 N.W.2d 658, 669 (Minn. 1984) (quotations omitted). But we also recognize the "need for exercising judicial restraint and for restricting judicial functions to a narrow area of responsibility lest [the court] substitute its judgment for that of the agency." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn. 1977).

Ford makes four specific arguments that the commissioner's remand decision is unsupported and arbitrary. We address each in turn. First, Ford argues that the commissioner's determination on remand "is fundamentally different" from the commissioner's prior decision and that because the commissioner does not explain the differences, the decision is "patently arbitrary." Because this court instructed the commissioner to reevaluate Ford's circumstances on remand, it is of no surprise—and indeed expected—that the decision on remand differs from the original decision.

Second, Ford argues that the commissioner "ignores its conclusion that the individuals [Ford] wishes to serve are 'not very vulnerable,' her victims were not 'very vulnerable,' and there is little similarity between victims and program clients." But the

10

commissioner specifically noted that although Ford's potential clients are "less vulnerable than some other individuals served in DHS-licensed facilities," they are still in recovery and "may be vulnerable to theft." Moreover, Ford's argument ignores the rule that any single factor may be determinative in making the commissioner's decision. *See* Minn. Stat. § 245C.22, subd. 3.

Third, Ford argues that "[t]he commissioner inappropriately uses a non-disqualifying offense as a basis not to set-aside a disqualification." On remand, the commissioner noted that Ford recently had been convicted of a crime for knowingly voting while ineligible. The commissioner concluded that this offense "evinces a pattern of continuing dishonest conduct and lack of full commitment to remain law abiding." Ford's assertion that the commissioner's discussion of this offense equates to "add[ing] disqualifying offenses to the statute" is without merit. The commissioner explicitly stated that the voting offense is *not* a disqualifying offense, but that the offense is relevant regarding how long Ford has remained law-abiding and whether she can be trusted to remain so. The commissioner reasonably concluded that the offense showed a pattern of dishonesty and continued criminal conduct.

Fourth, Ford argues that "[t]he commissioner failed to take a hard look at [her] length of employment in [the] human services field."[3] Ford relies on the recommendation letters from her former clients and family. But the commissioner's

---

[3] Ford's argument relies heavily on an unpublished decision of this court. Because unpublished decisions are not precedential authority, Minn. Stat. § 480A.08, subd. 3 (2012), we do not discuss that decision.

decision notes that the commissioner considered the letters and implies that the letters were not persuasive because the majority of them were not signed.

Ford also argues that the commissioner's decision is based on factual errors. For example, Ford notes that the commissioner erred by stating that Ford was convicted of four felony offenses even though two of Ford's felony-level offenses were reduced to misdemeanors. But the commissioner correctly stated elsewhere in the remand decision that two of the four felonies had been reduced to misdemeanors. Moreover, the severity of Ford's offenses was only one factor supporting the commissioner's decision. Thus, even if the commissioner erred by referring to Ford's reduced offenses as felonies, the error does not impact the commissioner's ultimate decision and therefore does not provide a basis for relief. *See In re Otter Tail Power Co.*, 417 N.W.2d 677, 679-80 (Minn. App. 1988) ("In order to obtain relief on appeal, a party must generally establish that it has been prejudiced as a result of a tribunal's actions. This is true in administrative, as well as judicial, proceedings."), *review denied* (Minn. Mar. 23, 1988).

Ford also contends that the commissioner incorrectly applied the definition of a crime of dishonesty when assessing Ford's voting offense. Knowingly voting while ineligible to do so is a crime in Minnesota. Minn. Stat. § 201.014, subd. 3 (2012). The commissioner's characterization of Ford's commission of that offense as "dishonest conduct" is reasonable, and it does not constitute a factual error.

In conclusion, none of Ford's arguments persuades us that the commissioner's decision is inadequately supported or arbitrary and capricious. The commissioner addressed all of the statutory factors and concluded that five were determinative. The

commissioner reasoned that the nature of the events leading to disqualification demonstrated a "pattern of dishonesty and lack of respect for the law," that there were 12 disqualifying offenses, that the period of time that Ford has been law-abiding is relatively short, and that Ford continued to engage in criminal behavior after completing treatment. The commissioner noted that Ford has made significant efforts to "turn [her] life around," but given Ford's recent and significant criminal history, the commissioner was not persuaded that Ford does not present a risk of harm to persons served by Valhalla.

We commend Ford for her reported success in recovery. Nonetheless, we are satisfied that the commissioner took a hard look at Ford's individual circumstances and did not err by denying her request for a set-aside.

**Affirmed.**